## CHUNG YUNE v. KELLY.

*(Circuit Court, D. Oregon.* December 29, 1882.)

**1. CUSTOMS DUTIES—ACTION TO RECOVER BACK.**

The plaintiff brought an action to recover the amount of duties paid by him on merchandise entered as sago flour, but classed and taxed by the collector as starch, against the protest of the plaintiff that the article was sago flour and free of duty. *Held,* that the plaintiff must recover, if at all, upon the ground stated in his protest, and therefore he could not recover, although it appeared on the trial that the article was in fact, not flour, and not dutiable.

**2. FLOUR—STARCH.**

A flour which is made from a farinaceous plant for food, though largely composed of starch granules, is not, therefore, the "made" or manufactured starch of commerce, upon which the statute (section 2504, Rev. St. p. 481) imposes a duty when brought from a foreign country; and it matters not that it may be in some measure used as starch.

**3. EXPRESS DESIGNATION OF AN ARTICLE.**

The farina of the root of the plant of the genus *manihot,* whether known as root flour, cassava, or tapioca, having been expressly exempted from duty by congress, (section 2505, Rev. St. pp. 488, 489,) is not included in the statute, *supra,* imposing a duty on starches, although it may be largely composed of starch granules and fit for use as starch.

Action to Recover Duties.

*Addison C. Gibbs* and *W. Scott Bebee,* for plaintiff.

*Rufus Mallory* and *James F. Watson,* for defendant.

DEADY, D. J. This action is brought to recover from the defendant the sum of $423.96, alleged to have been unlawfully collected by him from the plaintiff as duties on certain merchandise entered at this port by the latter. It is alleged in the complaint that on September 20, 1879, the plaintiff entered at the custom-house in Portland 148 boxes of merchandise, weighing 11,684 pounds, of the value of $367.20, as sago flour, an article exempt from duty under the laws of the United States, upon which the defendant, as collector of said port, imposed and collected a duty of $423.96, which the plaintiff was thereby compelled to pay, and that the plaintiff duly appealed from the decision of the defendant to the secretary of the treasury,

who affirmed the same, whereupon the plaintiff brings this action, etc. The defendant, by his answer, admits the allegations of the complaint, but denies "that said merchandise was or is sago flour," or exempt from duty; and, as a further defense, alleges that said merchandise was not "in fact sago flour," but "was starch not made from corn or potatoes, but some material to the defendant unknown, and as such starch was and is subject" to the duty collected thereon by the defendant. The case was tried with a jury, and there was a verdict and judgment for the defendant. The plaintiff moved for a new trial on the ground that the verdict was contrary to the law and the evidence.

A number of similar cases were pending against the defendant, and one—*Tond Duck Chung* v. *Kelly*—had been tried by the court, with a finding for the plaintiff on April 23, 1879, and afterwards retried with a jury, with a verdict for the plaintiff on January 13, 1880. The court not deeming the evidence produced on the trial by either party, as to the identity of the article in question, as satisfactory as it should be, for want of some known or admitted sample of sago flour with which to make a microscopic comparison of the granules of the former, postponed the consideration of the motion for a new trial until the trial of one of the other pending cases, before which it was expected that the parties would procure some samples of sago from Singapore, the place where the plaintiff claims that his flour came from, as a standard of comparison. Since then the case of *Chung Yune* v. *Kelly*, has been tried with a jury, and a verdict found for the defendant on December 8, 1882.

On the trial of this latter case it satisfactorily appeared, from the testimony of a witness sent to Singapore by the treasury department during the past summer, that sago flour is made in Singapore from the pith of the sago palm, (*sagus Rumphii*,) grown there on plantations for that purpose; and that a root flour is made there from the root of a species of the genus *manihot*, also grown there on plantations for that purpose. The flour made from this root is called by the Chinese, who are principally employed in the plantations and factories, *ling fune*, root, or wood flour. It is also known in the books and in commerce as *cassava* meal, from which is made the tapioca of commerce, sometimes called Brazilian arrow-root, from the fact that it is probably indigenous to Brazil, from whence it has been introduced into other parts of tropical America, Florida, Africa, and the East Indies. Amer. Cyclo. "Cassava;" Nat. Dis. Stille & Maisch, "Tapioca." Its early use and origin is suggested by a provision con-

tained in an agreement made early in the sixteenth century between Andres Nino and the king of Spain, by which that royal adventurer agreed to aid the latter in an expedition to the South sea—the Pacific ocean west of Panama—for "gold, silver, pearls, and precious stones," by furnishing for its use, at Jamaica, among other things, "2,000 loads of *cassava root* and 500 hogs." 1 Ban. His. P. S. 480, No. 2. But whether the cassava was intended as food for the "people" of the expedition or the "hogs" does not distinctly appear—probably for both. Samples of the flour or meal of the palm and the cassava, thus obtained from the plantations on the island of Singapore, were produced in court on the trial, and the article in question was subjected to a microscopic examination and comparison with these, and the evidence of the experts was unqualifiedly to the effect that, judging from the size and shape of the starch granules, the article imported by the plaintiff is not sago flour, and is cassava or root flour. And upon a personal examination of the granules of the three articles with the aid of the microscope, the difference in size and shape and the location of the *hilum* between those of the Singapore sago and the article in question was very marked, while the resemblance in those particulars between the granules of the latter and the cassava was equally manifest.

In the present case, as well as that of *Chung Yune* v. *Kelly*, the issue to be tried arose upon the allegation of the plaintiff that the article imported was sago flour, and the denial of the same by the defendant.

The goods were entered by the plaintiff as sago flour, and he protested against the payment of duties upon that ground alone. His right to maintain this action at all depends upon the statute, (section 3011, Rev. St.,) and he cannot recover under it unless he protested in writing against the payment of the duties, stating therein, "distinctly and specifically," the grounds of such protest. *Nichols* v. *U. S.* 7 Wall. 126: *Mason* v. *Kane*, Taney, 176; *Thomson* v. *Maxwell*, 2 Blatchf. 385; *Warren* v. *Peaslee*, 2 Curt. 235.

The burden of proof is upon the plaintiff, and before he can recover he must prove the truth of his allegation and protest that this article is sago flour. And therefore it is that it is of no avail to the plaintiff in this action that it now appears that this article is not dutiable, and ought not to have been charged with duty, because root flour, tapioca, and cassava are all on the free list as well as sago. Rev. St. 488, 489.

An issue was also made in the pleadings as to whether this article is "starch" made from some material other than potatoes, corn, or rice, and, as such, liable to pay a duty of three cents per pound and 20 per centum *ad valorem*, under schedule M, page 481, of the Revised Statutes. This issue was tendered by the defendant, and in the trial of it the burden of proof is upon him. It is probably an immaterial issue, as it is not apparent how any finding upon it could control or affect the final judgment in the case. But evidence and argument was given and made to the jury upon it at the trial without objection; and in the case of *Chung Yune* v. *Kelly,* it being manifest that there must be a verdict for the defendant upon the ground that the merchandise was not sago flour, the court, to enable the parties to have the benefit of the trial on this point, if the same should in any way become material hereafter, instructed the jury, if they found a verdict for the defendant, to find the answer to the following question, then submitted to them in writing, (Or Code Civil Proc. § 212),—"Is the article in question, and imported and entered by the defendant, a starch known to commerce as such, and made and intended to be used primarily by laundrymen in the stiffening and polishing of clothes"—to which the jury answered "No."

This answer is undoubtedly according to the law and the fact. This "ling fune" or "root flour," like the flour of wheat, corn, rye, rice, and other starch-bearing plants, is largely composed of starch granules, and may be used as starch. But it is not "made" or manufactured starch, or known to commerce as such.

It appears to be imported to this coast from Hong Kong, by the Chinese, as an article of food, though some small proportion of the quantity imported is used as starch in the laundries, to give a degree of luster and stiffness to the clothes which is said not to be attainable by the use of the ordinary starches.

The preparation of starch granules "made" or manufactured from the flour of farinaceous plants, for the purpose of being used in the arts as starch, sizing, or stiffening, and not food, is the starch of commerce, and the article upon which the clause in the statute imposing a duty on starch applies. It would be just as far-fetched and unreasonable to construe the statute as authorizing a duty on wheat flour because of its starchy nature, as on root or sago flour. Both are for the greater part composed of starch granules, and may be used for starch.

But it matters not what are the component parts of the root flour, or for what purpose it is used. Congress, by the act of June 6, 1872,

( 17 St. 234,) has placed it, since August 1, 1872, on the free list, and exempted it from duty by name. And this is sufficient to exclude it from the operation of the general clause imposing a duty on starches. When an article is designated in an act of congress by a specific name, general terms in the same or a subsequent act, although broad enough to comprehend it, are not considered applicable to it. A designation of an article *eo nomine* must prevail over a general description. *Homer* v. *The Collector*, 1 Wall. 486; *Reiche* v. *Smythe*, 13 Wall. 162; *Movius* v. *Arthur*, 95 U. S. 144; *Arthur* v. *Lahey*, 96 U. S. 112; *Arthur* v. *Rheims*, Id. 143.

The evidence introduced on the trial of this case was conflicting and unsatisfactory, because of the want of a known standard with which to compare the article. The weight of it may have been with the plaintiff, but that is not enough to justify a verdict for him. Leaving out of consideration the evidence of the defendant, the evidence of the plaintiff as to the identity of the article was open to question and doubt; and while the court might not feel authorized to set aside a verdict obtained upon it, for a stronger reason it would feel less so in case the verdict was against it.

But in the light of the evidence and verdict in the case of *Chung Yune* v. *Kelly*, it would be useless to grant a new trial in this case, as it would be followed, so far as can be seen, by another verdict for the defendant.

The motion is denied.