·HELLER *et al. v.* MAGONE.

*(Circuit Court, S. D. New York.   May 23, 1889.)*

1. CUSTOMS DUTIES—CLASSIFICATION—MANURES.

By the use of the phrase "guano, manure, and all substances expressly used for manure," found in the free list of the tariff act of March 3, 1883, (22 U. S. St. at Large, 488,) congress has plainly said that all imported substances, whether specially provided for *eo nomine,* or covered by any general language descriptive of their origin or qualities, which subserve the purpose of enriching the soil, and thus increasing the crops to be raised upon it, should be free.

2. SAME—MANURE SALTS.

An article, though in fact "sulphate of potash," and at and prior to the passage of the said tariff act of 1883 generally bought and sold in trade and commerce of this country under the name of "sulphate of potash," is, in cases of the importations thereof which are actually used in the manufacture of fertilizers, not dutiable under the provision for "sulphate of potash" contained in schedule A of the same tariff act, but is free of duty under the provision for "guano, manures, and all substances expressly used for manure," contained in the free list thereof.

At Law.

On June 6, July 25, and October 17, 1887, the plaintiffs made three importations from Hamburg, Germany, into the port of New York of a certain article of merchandise invoiced as "manure salt." The defendant, as collector of customs, pursuant to S. S. 7452, rendered April 7, 1886, classified this article for duty as "sulphate of potash," under the provision for "sulphate of potash," contained in Schedule A of the tariff act of March 3, 1883, (22 U. S. St. at Large, 488; Heyl, New, 70,) and exacted of the plaintiffs' duty thereon at the rate of 20 per centum *ad valorem,* and in the sum of $2,018.60, which, with interest up to the date of verdict, amounted to the sum of $2,225.84. Against this classification and exaction the plaintiffs duly protested, claiming "that said article is made and imported expressly for use as manure, and is expressly so used, and is entitled to free entry under the provisions for all substances expressly used for manure in the free-list act, March 3, 1883; *second,* we separately protest against your assessment of 20 per cent. *ad val.* on said article as sulphate of potash, claiming that while said article may probably contain 'sulphate of potash' to a greater extent than any other of its component elements, that it is nevertheless in fact and commercially a different article, being a compound containing other ingredients besides 'sulphate of potash,' and commercially known as 'manure salts,' and used expressly for manure, and therefore entitled to free entry by the provision of the free-list act of March 3, 1883, (T. I. 505.") The plaintiffs also duly appealed, and within 90 days after the decision of the secretary upon these appeals duly brought their suit to recover the duties exacted as aforesaid. Under the tariff act of July 30, 1846, (Schedule I, 9 St. at Large, 42,) "guano" was first mentioned *eo nomine,* and made free of duty; and again under the act of March 2, 1861, (section 23, 12 U. S. St. at Large, p. 178; Heyl, Old, 154.) Under the act

of March 3, 1857, (section 3, 11 U. S. St. at Large, p. 192,) "substances expressly used for manure" are first mentioned *eo nomine*, and such substances made free; and again under said act of March 2, 1861, (section 23, Heyl, Old, p. 165.) Under the act of July 10, 1870, (section 22, 16 U. S. St. at Large, p. 262; Heyl, Old, 638,) "guano and other animal manures" were free. Under section 2505, U. S. Rev. St., (Heyl, Old, 1609,) "guano and other animal manures," and, Heyl, (Old,) 1767, "substances expressly used for manure," were free. Under the act of March 3, 1883, (Heyl, New, 505,) "guano, manures, and all substances expressly used for manures," are free. The tariff act of 1883 also makes free the following articles, most of which were for the first time provided for *eo nomine* in various tariff acts passed since the passage of the act of 1846: "Albumen in any form or condition," (Heyl, New, 496;) "blood dried," (Id. 501;) "bone-dust and bone-ash for manufacture of phosphate and fertilizers," (Id. 503;) "carbon, animal, fit for fertilizing only," (Id. 504;) "hoofs," (Id. 512;) "kiersite," (Id. 615;) "kyanite, or cyanite, or kainite," (Id. 616;) "phosphates, crude or native, for fertilizing puposes," (Id. 626;) "muriate of potash," (Id. 627;) "nitrate of soda," (Id. 630;) "brimstone, not specially enumerated or provided for in this act," (Id. 632.) This act makes dutiable, *eo nomine,* "sulphate of ammonia," (Id. 37,) and "starch," (Id. 269.) It also makes free, besides "bone-dust and bone-ash for manufacture of phosphate and fertilizers," (Id. 503;) "barks, cinchona and other barks used in the manufacture of quinia," (Id. 521,) and "glass plate or disks, unwrought, for use in the manufacture of optical instruments." (Id. 708.) Upon the trial it appeared from the foreign analysis given on the invoices thereof that the plaintiffs' importations of the article in suit were composed of from 90.6 per cent. to 95.5 per cent. of "sulphate of potash," and by the analysis of the government chemist that they were composed of from 91.5 per cent. to 95.67 per cent. of such sulphate; and from the preponderance of the testimony given by both plaintiffs' and defendant's witnesses that on and prior to March 3, 1883, this kind of article was generally bought and sold in trade and commerce in this country under the name of "sulphate of potash." It also appeared that the plaintiffs' importations of the article in suit had been used in the manufacture of fertilizers, and that this kind of article was generally so used, although it was to some extent used in the manufacture of superphosphates, bichromate of potash, alum, and a few other articles. It also appeared that there were in trade and commerce in this country on and prior to March 3, 1883, certain articles bought and sold, and commercially known as "crystalized sulphate of potash;" that they were pure, or substantially pure, "sulphate of potash;" that they were sold in the crystalized or powdered form by druggists and dealers in chemicals; that they were used to some extent in laboratories, and to a very limited extent for medicinal purposes; but that they were not dealt in by dealers in fertilizers and fertilizing materials, nor were they used as fertilizers, or in the manufacture of fertilizers. It further appeared that among other materials, "blood," "albumen," "egg albumen," "starch," "bone-black," "brimstone," "hoofs," "ground bones," "tank-

age," "dried blood," "azotine," "sulphate of ammonia," "nitrate of soda;" "muriate of potash," "kainit," "kieserit," "mineral phosphates," and, "acid phosphates" were fertilizing materials, and generally used in the manufacture of fertilizers.

Both sides having rested, the defendant's counsel moved the court to direct the jury to find a verdict for the defendant—*First.* On the ground that the article in suit is provided for *eo nomine* in the tariff act of March 3, 1883, as "sulphate of potash." *Second.* On the ground that this article is not provided for under the provision of said tariff act for "all substances expressly used for manure," inasmuch as by the provisions therein for "bone-dust and bone-ash for manufacture of phosphate and fertilizers," "barks, cinchona or other barks used in the manufacture of quinia," "glass plate or disks, unwrought, for use in the manufacture of optical instruments," and other like provisions, it is evident that the expression, "all substances expressly used for manure," means substances used for or as manure, and not substances used in the manufacture of manure or fertilizers. *Third.* On the ground that this article is "sulphate of potash," and is provided for in said tariff act *eo nomine* as "sulphate of potash," a specific expression; and, if otherwise covered by the general expression, "all substances expressly used for manure," is not therefore provided for under such general expression. *Fourth.* On the ground that plaintiffs have not proven facts sufficient to entitle them to recover. In support of this motion the defendant's counsel argued: *First.* That the article in suit was "sulphate of potash," generally used in the manufacture of fertilizers, and provided for *eo nomine* in the tariff act of 1883. *Second.* That if this article had been covered by and embraced within the provisions of the statutes passed prior to the act of March 3, 1883, for "substances expressly used for manure," it was expressly exempted from the provision for "substances expressly used for manure" in the act of March 3, 1883, by being for the first time provided for in said act of 1883, *eo nomine,* as "sulphate of potash;" and that, as this article was provided for *eo nomine,* it could not be admitted that the same act which in one section subjects it to duty should in a subsequent section exempt it from duty under such a general expression. Such inconsistency is not to be attributed to congress. *Third.* That if it be conceded for the sake of argument that the general expression "all substances expressly used for manure," in the free list of the act of 1883, be sufficiently broad to cover the article in suit, then, as it (one article) is specifically provided for in that act as "sulphate of potash," such specific designation determines its classification for the purposes of the tariff act, and the general expression (for many articles) does not avail. *Arthur* v. *Lahey,* 96 U. S. 112, and cases there cited. *Fourth.* But the provision, "all substances expressly used for manure," does not cover this merchandise. The meaning of this expression is substances which are used for or as manure, not substances used in the manufacture of manure. That this is the meaning of this expression is evidenced by the following provisions also found in the free list of the act of 1883: "Bone-dust and bone-ash, for manufacture of phosphate

and fertilizers," (Heyl, New, 503;) "barks, cinchona or other barks used in the manufacture of quinia," (Id. 521;) "glass plate or disks, unwrought, for use in the manufacture of optical instruments," (Heyl, 708.) *Fifth.* That if it had been intended by congress to include in the general expression, "all substances expressly used for manure," all substances used in the manufacture of manure or fertilizers, it would never have deemed it necessary to exempt from duty *eo nomine* the following articles, which are used in the manufacture of fertilizers: "Albumen in any form or condition," (Heyl, New, 496;) "blood dried," (Id. 501;) "bone-dust and bone-ash for manufacture of phosphate and fertilizers," (Id. 503;) "carbon, animal, fit for fertilizing only," (Id. 504;) "hoofs," (Id. 512;) "kiersite," (Id. 615;) "kyanite, or cyanite, or kainite," (Id. 616;) "phosphates, crude or native, for fertilizing purposes," (Id. 626;) "muriate of potash," (Id. 627;) "nitrate of soda," (Id. 630;) "brimstone, etc.," (Id. 632.) This argument is further strengthened by the fact that we find the following articles also used in the manufacture of fertilizers, and especially enumerated, subject to duty: "Starch, (Id. 269;) sulphate of ammonia," (Id. 37.)

This motion the court denied. The defendant's counsel then moved the court to submit the case to the jury on the question of whether the article in suit was a "substance expressly used for manure." This motion the court denied. The court then, on motion of the plaintiffs' counsel, directed a verdict in their favor.

*Stephen G. Clarke,* and *Charles Curie,* for plaintiffs.

*Stephen A. Walker,* U. S. Atty., and *Thomas Greenwood,* Asst. U. S. Atty., for defendant.

LACOMBE, J., (*orally.*) The more frequently we are called upon to interpret statutes, the greater likelihood there is of developing a tendency to overstrained construction. It is wholesome occasionally to turn back to first principles, and to appreciate the force of the old rule, again reaffirmed by the supreme court in *Lake Co.* v. *Rollins,* 9 Sup. Ct. Rep. 651, —that, to get at the thought or meaning expressed in a statute, the first resort in all cases is to the natural signification of the words in the order of the grammatical arrangement in which the framers of the instrument have placed them; and that it is a perfectly safe assumption that the framers of an act meant exactly what they said. The clause here, (section 505 in the free list,) reading, "Guano, manures, and all substances expressly used for manure," very clearly expresses, and there seems no doubt that by the use of this phrase congress has plainly said, that all imported substances, whether specially provided for *eo nomine,* or covered by any general language descriptive of their origin or qualities, which subserve the purpose of enriching the soil, and thus increasing the crops to be raised upon it, should be free. That is the plain meaning of the paragraph as it stands. I think we should err if, from some strained and over-elaborate examination of a great many other paragraphs in the act, we should seek to spell out some understanding or conception of what we might possibly infer was the intent of congress.

We are entitled to take their intent as expressed by the plain language they have used. It is very true that the use of the word "expressly" may make this paragraph difficult of application in very many cases; in fact in all cases, so far as the collector is concerned; but it gives us no trouble in this particular action, because there is abundant evidence here to warrant the holding that these particular importations were expressly used for manure. They have been traced from their importers into the hands of individuals whose sole business is the preparation of "fertilizers," which word is a mere synonym for manure; and, should the jury draw from the testimony any other inference than that the articles were expressly used for manure, I should be inclined to set aside the verdict. Therefore I think it is unnecessary to send the question to them. The defendant refers to the well-settled rule of interpretation that a specific designation will prevail over a general one, but the clause which he contends to be a general one (section 505, *supra*) is in reality more specific than the paragraph under which he insists these imports should be classed (paragraph 70, "sulphate of potash,") because from the general class of articles properly classified as sulphate of potash it differentiates that smaller portion which are "expressly used for manure." I will therefore direct a verdict for the plaintiffs in the sum of $2,225.84.