In re WISE.

(Circuit Court, N. D. California. December 14, 1896.)

CUSTOM DUTIES—CLASSIFICATION—TAPIOCA FLOUR.

Tapioca flour is not dutiable under paragraph 323 of Act Oct. 1, 1890, as a "preparation * * * fit for use as starch," but belongs to the free list as "tapioca," under paragraph 730. Townsend v. U. S., 5 C. C. A. 488, 56 Fed. 222, followed.

Samuel Knight, Asst. U. S. Atty., for petitioner.
Charles Page, for importers, respondents.

McKENNA, Circuit Judge (orally). This case involves the consideration of the tariff act of 1890. It is contended by the collector of the port that the merchandise in question comes under section 1, par. 323, of the tariff bill of 1890, which reads as follows: "Starch, including all preparations, from whatever substance produced, fit for use as starch, two cents per pound." The importer contends that it comes under section 2, par. 730, which reads: "Tapioca, cassava, or cassada, free." The case is an extremely doubtful one. If the words in paragraph 323, "fit for use as starch," mean physically fit, if I may use that expression, the imported article satisfies the definition. The testimony shows it to be physically fit. If it means, however, "commonly used as such," as the Wilson bill expresses it, the merchandise is not within the definition. If we pass that difficulty, we meet another one,—what is tapioca? Paragraph 730 reads, "Tapioca, cassava, or cassada, free." What, then, is tapioca? The witnesses for the collector say there are only two forms of it,—flake and pearl. Some of them testify that they had never heard of the form tapioca flour. The testimony of the importers is that there are three forms,—pearl, flake, and the flour. But the witnesses may be discriminated, and the difference of their testimonies accounted for. Those of the government were chiefly acquainted with the retail trade, and their knowledge and experience were hence confined to the San Francisco market. Those of the importers were in the importing trade, and their knowledge extended to other markets as well as that of San Francisco. The testimony therefore establishes that while, possibly, in San Francisco, there are but two forms of tapioca, the pearl and the flake, in other markets and ports there is a third form, that of the flour. Interpreting, therefore, the words, "fit for use as starch," in paragraph 323, as "physically fit," there is a clear conflict between it and paragraph 730, which admits tapioca,—pearl, flake, and the flour,—free. But it is not neces-

sary to resolve this conflict, or to reconcile the cases of Chung Yune v. Kelly, 14 Fed. 639, and Heller v. Magone, 38 Fed. 908, the first of which seems to imply that the designation of an article eo nomine must prevail over a general description, and the latter of which seems to imply that the designation of a purpose may prevail over a designation eo nomine. If the doubts arising from these considerations alone could be resolved in favor of the government, we would yet be embarrassed by the authority, or seeming authority, of the case of Townsend v. U. S., 5 C. C. A. 488, 56 Fed. 222. It is a decision of the circuit court of appeals of the Second circuit, and hence authoritative to me. It arose upon an importation into the port of New York of the same article involved in the case at bar, and the same provisions of the tariff act of 1890 received interpretation. The board of appraisers had held the article was not known by the designation "tapioca," and was not in fact such, and was not suitable for food, but held that it was a preparation fit for use as starch. The circuit court hesitatingly concurred with the last conclusion, but dissented from the others. The court of appeals reversed the decision, saying, through Judge Shipman, as follows:

"The decision of the appeal turns upon the question whether, under the testimony, tapioca flour can be considered as a preparation fit for use as starch. The article has never been sold as a starch, and is not considered in this country as adapted to the ordinary purposes of that article, and has never been manufactured into commercial starch, but it is chemically a starch. The term 'preparations fit for use as starch' means preparations which are actually, and not theoretically, fit for such use, which can be practically used as such, and not which can be made by manufacture fit for such use. Tapioca flour is used for purposes which are analogous to those for which starch is used. It is not used, though it probably could, by adequate preparation, be used for the same purposes, unless its use as a sizing can be called the same purpose. The testimony of the witness upon that subject was not sufficient to justify the stress which the board of general appraisers placed upon it. The very suggestive evidence of the unsuitableness of tapioca for commercial use as starch is that, although it is much cheaper than the starch made in this country, it does not come into commercial competition with starch made here."

It is contended the facts in that case are not the same as in the case at bar; that the evidence did not show there, and does show here, that tapioca flour is "fit for use as starch." It may be that the facts in that case were not the same as the facts in this, but I hesitate to so conclude, because of the confusing consequences of a mistake. It might result in making a law for the port of San Francisco different from that of the port of New York. I think, therefore, under the circumstances—doubts of the law, a careful deference to authority—I should affirm the decision of the board of appraisers. The board followed a court of appeals. It should be reversed by no less an authority, more especially as the consequence may be a discriminating administration of the tariff laws. The decision of the board is therefore affirmed.