## MEYER et al. v. CADWALADER.

### (Circuit Court of Appeals, Third Circuit. October 17, 1898.)

### No. 32.

CUSTOMS DUTIES—CLASSIFICATION—CHIEF USE AS DETERMINING FACTOR.

The chief or predominant use to which an article is applied determines its classification, although it may be commonly, generally, and practically, and not merely exceptionally, used for other purposes. The chief or predominant use meant is that which, in ordinary language, is so called.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

This was an action brought, in 1886, by the firm of Meyer & Dickenson, in the court of common pleas of the county of Philadelphia, and subsequently removed to the circuit court of the United States, against John Cadwalader, collector of customs, to recover an alleged excess of duties exacted by the said collector. The importations in question consisted of velvets, laces, and gauzes, composed of silk, or of which silk was the component material of chief value. Upon these articles the collector imposed a duty of 50 per cent. ad valorem, under section 383 of Schedule L of the act of March 3, 1883, which reads: "All goods, wares and merchandise not specially enumerated or provided for in this act, made of silk, or of which silk is the component material of chief value, fifty per centum ad valorem." It was claimed by the importers that the articles were trimmings used for making or ornamenting hats, bonnets, and hoods, and should have been assessed for duty under section 448 of Schedule N of said act, the terms of which are as follows: "Hats, and so forth, materials for; braids, plaits, flats, laces, trimmings, tissues, willow sheets and squares, used for making or ornamenting hats, bonnets and hoods, composed of straw, chip, grass, palm leaf, willow, hair, whalebone, or any other substance or material, not specially enumerated or provided for in this act, twenty per centum ad valorem." A considerable amount of evidence was put in by the respective parties, and the case was submitted to the jury, who found a verdict for the defendant. To the judgment entered on this verdict, a writ was sued out to this court, assigning error in the instructions of the trial judge.

Frank P. Pritchard, for plaintiffs in error.

Ellery P. Ingham and Dwight M. Lowrey (Henry M. Hoyt, Asst. Atty. Gen., on brief), for defendant in error.

Before SHIRAS, Circuit Justice, and BUTLER and KIRKPATRICK, District Judges.

SHIRAS, Circuit Justice, after stating the facts as above, delivered the opinion of the court.

The question at issue in the trial court, and to which the evidence and arguments of both the parties were directed, was whether the articles subject to duty were used for making or ornamenting hats, bonnets, and hoods, within the meaning of section 448 of Schedule N of the act of March 3, 1883. It was not, indeed, denied on the part of the government, that such articles could be, and were to a large extent, used for such purposes; but the contention was that as the evidence on behalf of the government showed, if believed, that there was a common, practical, and profitable use of such articles for purposes other than for hats, bonnets, and hoods, then the chief use of such article cannot be said to have been for hats, bonnets, and hoods; that the chief use for hats, bonnets, and hoods means that this was the only common use, and not merely that in the majority of instances the articles were so used. The plaintiffs' position was that if the imported articles were trimmings, and were more generally used for the making and ornamentation of hats, bonnets, and hoods than for other purposes, they must be regarded as coming within Schedule N of the act, and subject to a duty of 20 per centum; that, even if the jury should find that the articles in question are used for other purposes, yet, if they also find that the use to which they are chiefly applicable is in making and ornamenting hats, bonnets, and hoods, the verdict should be for the plaintiffs.

This question is not a new one. It was presented in the case of Langfeld v. Hartranft (unreported), in the circuit court for the Eastern district of Pennsylvania, before Circuit Judge McKennan and a jury. There, as here, the collector had assessed certain velvet ribbons, of which silk was the material of chief value, at a duty of 50 per centum ad valorem, under Schedule L of the act of March 3, 1883; and the action was brought by the importer, claiming that they should have been assessed as articles within Schedule M of the same act, at 20 per centum. There was testimony on the part of the plaintiff tending to show that the articles in question were trimmings, chiefly used for making or ornamenting hats, bonnets, and hoods, but that they also might be, and sometimes were, used for trimming dresses. The testimony on the part of the defendant tended to show that they were dress trimmings equally with hat trimmings, and were commonly used as much for the one purpose as the other. In this state of the proof, the judge charged the jury as follows:

"It is the use to which these articles are chiefly adapted, and for which they are used, that determines their character, within the meaning of this clause of the tariff act. It is the predominant use to which articles are applied that determines their character. It certainly could not have been the intention of congress, in framing this clause of the law, to admit the importation, at a low rate of duty, of articles which may be used for certain purposes, but which are used chiefly for another and different purpose. You will therefore determine to which use these articles in question are chiefly devoted. If they are hat trimmings, and used for making or ornamenting hats, then the rate of duty imposed was excessive, and the plaintiff is entitled to recover the excess. If, however, in the determination of this question of fact, you find the articles to be chiefly used for other purposes, you will find for the defendant. The question is simply and purely one of fact, namely,

what is the predominant use to which these articles are devoted? As you determine that question you will return your verdict."

There was a verdict and judgment for the plaintiff, and the case was taken to the supreme court, where the instructions of the trial judge were approved, and the judgment affirmed. Hartranft v. Langfeld, 125 U. S. 128, 8 Sup. Ct. 732. In disposing of the case, the supreme court said, among other things:

"The contention which appears to have been made on behalf of the government on the trial of the case, that these velvet ribbons could not be classified as trimmings used for making or ornamenting hats, bonnets, or hoods (within the meaning of the section levying the duty of twenty per centum ad valorem), unless they were shown to have been used exclusively for that purpose, is not insisted upon by the solicitor general in this court. It was very properly abandoned, the charge of the court upon that point being, in our opinion, clearly right."

In Robertson v. Edelhoff, 132 U. S. 614, 10 Sup. Ct. 186, on error to the circuit court for the Southern district of New York, the case of Hartranft v. Langfeld was reviewed and followed, and the court said that in that case "the real controversy was as to the purpose for which, as trimmings, they were principally used."

Precisely the same question again arose in the circuit court of the United States for the Eastern district of Pennsylvania, in the case of Wanamaker v. Cadwalader (unreported), where, again, the controversy was as to the character of the imported articles as determining the rate of dutiable assessment. The trial judge charged the jury as follows:

"Upon the uncontroverted proofs in this case, ribbons are trimmings. The issue here is, what kind of trimmings are the particular ribbons in controversy? Are they trimmings chiefly for hats, bonnets, or hoods? This is a question of fact for the jury, which, if answered in the affirmative, entitles the plaintiff to recover. I instruct you accordingly. If you are satisfied, under the evidence, considering the preponderating weight of it, that these kinds of ribbons, such as you have here, are commonly and usually used for the ornamentation of hats, then the character of these goods is determined. These are the two facts that you are to consider and determine by your verdict: First, are these ribbons, of which you have samples here, trimmings, within the section of the act of congress? And, secondly, if so, are they used more largely than for any other purpose in the making and ornamentation of hats, bonnets, and hoods? These are the two facts, and, as you determine them, this case must be decided."

In the same court, and about the same time, the case of Meyer v. Hartranft (unreported) was tried. In it two questions were presented: First, whether piece goods, commercially known as "chinas" and "marcelines," which are used for lining hats and bonnets, were dutiable at the rate of 20 per cent. ad valorem, under Schedule N of the tariff act, as materials "used for making hats, bonnets or hoods"; and, secondly, if so, what was the chief use to which they were applicable? In charging the jury, the trial judge said:

"The evidence tends to show that chinas and marcelines are particularly adapted and intended to be used, and in fact are and long have been used, as inside appendages for hats, bonnets, and hoods, to trim and finish them, and that their substantial commercial value consists in that use. Are they or are they not trimmings, according to the natural meaning of that word? This you will determine, taking into consideration all the evidence on the

subject, and having regard to the preponderating weight of the evidence. If you should find from the evidence that the articles here in question, chinas and marcelines, were not trimmings, that, of course, would make an end of the plaintiff's case; but, if you should find them to be trimmings, then the only remaining inquiry will be as to what their chief use is."

There were verdicts and judgments in favor of the importers, and both cases were taken to the supreme court. In that court a labored and able effort was made to have the case of Hartranft v. Langfeld reconsidered and overruled, and to have the doctrine of chief use, as determining the character of imported goods under the tariff act of March 3, 1883, abandoned, as not found in the statute, as impracticable in application, and as rendering the law uncertain. The court held that the instructions of the trial judge were correct applications of the case of Hartranft v. Langfeld, and that the judgments must be affirmed, unless that case and the case of Robertson v. Edelhoff were to be overruled. Upon full consideration, the supreme court declined to overrule or modify the previous cases, and the judgments were accordingly affirmed. Cadwalader v. Wanamaker, 149 U. S. 532, 13 Sup. Ct. 979, 983; Hartranft v. Meyer, 149 U. S. 544, 13 Sup. Ct. 982, 983.

It is therefore quite evident that if the circuit court, in the trial of the present case, was bound to follow and apply the rulings of the supreme court in the cases we have just reviewed, the plaintiffs were entitled to have the case submitted to the jury under the points or prayers for instruction presented by them to the trial judge. The evidence pro and con was of the same character with that given in the cases of Langfeld v. Hartranft and Wanamaker v. Cadwalader, namely, on the part of the plaintiffs tending to show that the articles in question were chiefly used for making or ornamenting hats, bonnets, or hoods, and on the part of the government tending to show that they were commonly, practically, and generally used for other purposes. The instructions prayed for were substantially, if not in very terms, the same with those given by the circuit court in the previous cases, and approved as correct by the supreme court. But the learned judge, while not overlooking the previous cases, modified them in what we deem a substantial particular. Affirming the view that chief use is the sole test to be applied in ascertaining whether any article should be regarded as trimmings, and also for determining whether its use should be regarded as sufficient to bring it within the operation of the phrase "used for making or ornamenting hats, bonnets, or hoods," as that phrase occurs in the act of congress, he added the following instruction:

"Chief use is that which was commonly, practically, and generally done, and it is not to be overthrown by occasional or exceptional use for other purposes, but that no use, though common, practical, and general, can rightly be regarded as the chief one, if in fact there was also any other use which was not occasional or exceptional, but was common, practical, and general. If there was an ordinary use, and also an extraordinary use, the former, and not the latter, was the chief use."

What was the meaning of this language, or, rather, what meaning were the jury entitled to give to it, in view of the evidence and contentions of the parties? Undoubtedly, casual expressions used by a trial judge when charging a jury, even if of doubtful legal import, are not

to be used to render a trial nugatory, if the charge was substantially correct, and if it is evident that the jury were not influenced by the ambiguous utterance. But in the present instance the question covered by this precise instruction was the turning point of the case,—was the very matter to which the testimony of the witnesses and the arguments of counsel all pointed. As we understand the learned judge, and as the jury, we think, were entitled to understand him, the use made of the imported articles would not be a chief use, bringing them within Schedule N of the tariff law, and subjecting them to the 20 per centum thereby prescribed, unless the other uses shown by the evidence were merely exceptional, extraordinary, or occasional; that, if the articles were frequently or generally used for other and different purposes than for making or ornamenting hats, bonnets, and hoods, then their use for making or ornamenting hats, bonnets, and hoods would not be a chief use, within the meaning of the statute, even if the principal and predominant use was for making and ornamenting hats, bonnets, and hoods, and even if the other uses, though common and general, were infrequent and commercially uninmportant. That such instruction was not consistent with the previous cases is obvious.

Said the supreme court in Hartranft v. Langfeld:

"It appears from the evidence that the goods in question were 'trimmings,' and that they were 'used for making or ornamenting hats, bonnets, and hoods.' That they were 'trimmings' was not matter of controversy; all the witnesses on both sides spoke of them as such. Neither was it disputed that they were 'used for making or ornamenting hats, bonnets, and hoods'; but there was no evidence that they were used exclusively for that purpose. The testimony on the part of the plaintiffs tended to show that they were chiefly used for making or ornamenting hats, bonnets, or hoods, but also that they might be, and sometimes were, used for trimming dresses. The testimony on the part of the defendant tended to show that they were dress trimmings equally with hat trimmings, and were commonly used as much for the one purpose as the other. In this state of the proof, the judge charged the jury as follows: 'It is the use to which these articles are chiefly adapted, and for which they are used, that determines their character, within the meaning of this clause of the tariff act. * * * It is the predominant use to which articles are applied that determines their character.'"

So, in the case of Wanamaker v. Cadwalader, the trial judge instructed the jury that they should find for the plaintiff if the articles were used more largely than for any other purpose in the making and ornamentation of hats, bonnets, and hoods; and this instruction was approved by the supreme court. We think that these decisions cannot be interpreted to warrant the instruction given in the present case. The arguments so earnestly and skillfully urged to lead us to hold that the use to be regarded is not the chief or predominant one among several uses, but as compared with exceptional or extraordinary uses, are the same that were pressed ineffectually on the supreme court in the case of Cadwalader v. Wanamaker.

But it is further contended that, whatever may have been the import of the previous decisions, there have been subsequent utterances by the supreme court which so far change or modify the construction to be put upon this clause in the tariff law as to justify the ruling in the present case; and this view seems to have prevailed with the trial judge.

The first case relied on, that of Magone v. Heller, 150 U. S. 70, 14 Sup. Ct. 18, was on error to the circuit court of the United States for the Southern district of New York. In that court an action was brought by a firm of importers against the collector of the port of New York to recover back duties assessed under the tariff act of March 3, 1883, upon three importations in 1887 of an article invoiced as "manure salts," which the collector held to come within the clause "potash, sulphate of, twenty per centum ad valorem," in Schedule A, but which the plaintiffs claimed to be within the clause of the free list, which exempted from duty "all substances expressly used for manure." The jury returned a verdict for the plaintiffs by direction of the court, and to the judgment rendered on the verdict a writ of error was sued out. 38 Fed. 908. The supreme court held that the obvious purpose of the clause exempting manures from duty was to promote agriculture; that the phrase "expressly used for manure" was equivalent to "used expressly," or "particularly," or "especially," for manure, and denoted those substances the only common use of which, either by themselves or in combination with other materials, is for the purpose of fertilizing the soil; that the fact that occasionally or by way of experiment it is used for a different purpose would not take it out of the exemption, but that, if it were commonly, practically, and profitably used for a different purpose, it could not be considered as "expressly used for manure," even if in the majority of instances it were so used; that to hold otherwise would be to extend to other industries an exemption intended for the benefit of agriculture only; that, accordingly, it was a question of fact, to be determined by the jury, whether the article was "expressly used for manure," in the sense of the law; that the trial court acted rightly in refusing to direct a verdict for the defendant, but erred in denying the defendant's request to submit the case to the jury, and in directing a verdict for the plaintiffs. In itself considered, we are unable to perceive that, by what was said or decided, the supreme court intended in this case to modify the recently decided cases of Cadwalader v. Wanamaker and Hartranft v. Meyer. No reference whatever was made in the opinion to those cases. The clause of the act under consideration was not the one defined and interpreted in the previous cases; was different in subject-matter and in phraseology. The case went off upon the view taken of the meaning of the phrase "expressly used," and of the supposed purpose of congress, in exempting manures, to benefit agriculture only.

The next case referred to is that of Sonn v. Magone, 159 U. S. 417, 16 Sup. Ct. 67. This arose out of an action brought in the circuit court for the Southern district of New York, by importers, to recover duties alleged to have been improperly exacted. The articles in question were lentils and beans, and the contest was whether the collector was right in imposing a duty upon them as "vegetables," or whether, as claimed by the plaintiffs, they were exempt from duty as "seeds." The circuit court directed a verdict for the defendant, and entered judgment thereon. The judgment was affirmed in the supreme court. In its opinion the court said:

"The predominant use of lentils and beans is for food, and, as such, they are commonly called vegetables, although they may be regarded botanically as seeds, and may sometimes be used for seeding purposes. Under such circumstances, ordinary use, not occasional or subsequent use, furnishes the guide for classification."

So far as this case has any bearing on the question before us, it would appear to favor the contention of the plaintiffs, that it is the chief or predominant use to which imported articles are put which determines their classification.

The only other case cited on behalf of the defendant in error is Magone v. Wiederer, 159 U. S. 555, 16 Sup. Ct. 122, on error to the circuit court of the United States for the Southern district of New York. The plaintiff below imported in 1887 a quantity of pieces of glass, cut in shapes to order, and with beveled edges, intended to be used in the manufacture of clocks. The collector classified them as "articles of glass cut, engraved," etc., subject to a duty of 45 per cent. ad valorem. The plaintiff claimed that they were dutiable as "parts of clocks," and, as such, subject to a duty of 30 per cent. ad valorem. The court below charged the jury that "the principal or chief use of the articles would determine their tariff classification." In its opinion, affirming the judgment and approving the instruction, the supreme court used the following language:

"The instructions which were refused asked the court to rule that exclusive use was the correct criterion to determine the classification. The error of this contention seems obvious from the most casual consideration. If exclusive use were made the test, then an exception would destroy the rule; for however general or universal the use of a particular article might be, if exceptionally used for another purpose, such use would destroy the effect of the general and common use, and make the exception the controlling factor. It is urged that, if exclusive use is not made the criterion, it will be impossible to assess duties, because of the difficulty of ascertaining the chief or general and common use; but it is manifest that this argument of inconvenience is a mistaken one, and that, on the contrary, it would be impossible to resort to use as a criterion of classification if exclusive use must be ascertained in so doing; for that which is generally and commonly done may be known, but that which is so universally done as to be without any exception is difficult, if not impossible, of ascertainment. The strength of this reasoning has caused counsel, in the discussion at bar, to admit that the correct standard is not exclusive use, which was presented in the first, fourth, and fifth requests to charge, but that such test is to be found in the exclusive commercial use, which was embraced in the second and third requests. The proposition involves a distinction without a difference. How the line can be drawn between exclusive use and exclusive commercial use, in trade or commerce, is impossible of statement. Indeed, this difficulty is likewise so apparent that, in defending the proposition of exclusive commercial use, it is defined in the argument to be 'known in commerce'; but 'known in commerce' is a matter of commercial designation, not of commercial use. Thus, it is impossible to state the proposition of exclusive use without being driven, by the reason of things, to abandon it, and seek refuge in the theory of exclusive commercial use, or exclusively used in trade or commerce. It is equally impossible to state this last contention without resolving it into a question of commercial designation. The decisions of this court abundantly support the refusal to give the charges asked. Hartranft v. Langfeld, 125 U. S. 128, 8 Sup. Ct. 732; Robertson v. Edelhoff, 132 U. S. 614, 10 Sup. Ct. 186; Cadwalader v. Wanamaker, 149 U. S. 532, 13 Sup. Ct. 979, 983; Walker v. Seeberger, 149 U. S. 541, 13 Sup. Ct. 981, 983; Hartranft v. Meyer, 149 U. S. 544, 13 Sup. Ct. 982, 983; Magone v. Heller, 150 U. S. 70, 14 Sup. Ct. 18; Sonn v. Magone, 159 U. S. 417, 16 Sup. Ct. 67.

*"It is urged that Worthington v. Robbins, 139 U. S. 337, 11 Sup. Ct. 581, and Magone v. Heller, are in conflict with the other cases above quoted, and therefore such other cases, by implication, are overruled. The contentions are without foundation. It proceeds upon the hypothesis that this court overruled, in Hartranft v. Langfeld and Robertson v. Edelhoff, when, in Cadwalader v. Wanamaker, Walker v. Seeberger, and in Hartranft v. Meyer, it affirmed, those cases, and held itself bound by the doctrine of chief use which was there announced. So, also, it presupposes that this court, in Magone v. Heller, reversed the doctrine established in a line of carefully considered cases, without even making a reference to them. It is apparent that the matters decided in Worthington v. Robbins and Magone v. Heller do not conflict with the adjudications of this court as to the chief or predominant use, which began with the case of Maillard v. Lawrence, 16 How. 261, and has found fuller expression in the line of cases above referred to."*

That portion of the court's remarks which we have italicized is, we think, a sufficient reply to the contention that in the cases of Magone v. Heller and Magone v. Wiederer there was any intention to depart from the rule of chief or predominant use as defined in the previous cases. The instruction complained of must be understood to mean that when the evidence shows that the articles in question have a common, general, and practical, not merely exceptional, use, other than the use chosen as the basis of classification, it may, indeed, have a "chief use" in popular language, having regard either to quantity consumed or to the number of instances; but it cannot have any "chief use," in a judicial sense; that "chief" is not to be contrasted with "lesser," or "minor," or "unimportant," but is to be contrasted with "exceptional," "extraordinary," or "uncommon." This is the meaning attributed to the charge in the printed brief of the defendant in error, and this is the very contention which was disapproved by the supreme court, as we read the cases. The chief or predominant use to which the attention of the jury, in such cases, should be directed, is that which in ordinary language and conception is so called. It is not claimed by the defendant in error that the instruction, in the particular complained of, was unimportant, and may not have influenced the jury. Our conclusion is that the exceptions to the charge must be sustained. The judgment of the circuit court is accordingly reversed, and the case is remanded to that court, with directions to award a new trial.