MOODY v. PATTERSON, Collector of Customs.

(Circuit Court, D. Oregon. March 18, 1907.)

No. 2,888 (1,688).

CUSTOMS DUTIES—CLASSIFICATION—SHEEP DIP—USE.

In Tariff Act July 24, 1897, c. 11, § 2, Free List, par. 657, 30 Stat. 201 [U. S. Comp. St. 1901, p. 1687], providing for sheep dips, except "compounds or preparations that can be used for other purposes," the application of this exception is not to be determined by the rule of chief or predominant use of an article as sheep dip; and Cannon's dip, a preparation advertised as fit for various other purposes, and presumably having commercial value for such purposes, is not covered by the paragraph.

[Ed. Note.—Interpretation of commercial and trade terms in tariff laws, see note to Dennison Mfg. Co. v. United States, 18 C. C. A. 545.]

On Application for Review of a Decision of the Board of United States General Appraisers.

These proceedings were brought by R. E. Moody, importer, against I. L. Patterson, collector of customs at the port of Portland, Or. Note, Shallus v. Stone (C. C.) 150 Fed. 605.

Ralph E. Moody, for plaintiff.
Wm. C. Bristol, U. S. Atty.

WOLVERTON, District Judge. On August 22, 1902, the petitioner imported from England 350 drums of coal tar preparation for sheep dip. This was classified by the collector of customs as a chemical compound under paragraph 3 of the tariff act of 1897 (Act July 24, 1897, c. 11, § 1, Schedule A, 30 Stat. 151 [U. S. Comp. St. 1901, p. 1627]), and a duty of 25 per cent. ad valorem assessed thereon. The petitioner, not being satisfied with the action of the collector, paid the duty under protest, and appealed to the Board of United States General Appraisers. The compound was referred to the United States chemist at New York, who found it to be an "alkaline preparation of mineral oil and coal tar distillates [phenoloid bodies, etc.] pyridin bases, and some resin compounds; does not contain arsenic compounds." Upon the testimony submitted, this report of the chemist being considered, the Board of Appraisers found that the merchandise in question was a preparation adapted for use as a sheep dip, as a medicine, and as a disinfectant, and therefore affirmed the survey of the collector of customs. The plaintiff now petitions the court for a review of the findings of the appraisers, and prays that their judgment in the premises may be reversed. The petitioner claims that the preparation imported is free of duty, and falls within the purview of paragraph 657 of the act of Congress above designated. This paragraph comprises "sheep dip, not including compounds or preparations that can be used for other purposes." The question for decision is whether or not this preparation falls within paragraph 3 of the act alluded to, or within the exception as denoted by paragraph 657. It has been determined as to the latter paragraph that the phrase employed thereby, namely, "that can be used for other purposes," refers to a compound fit for other purposes than dipping sheep

in the commercial sense, or that people buy and actually use for other purposes. In re Hulme, G. A. 4124 (T. D. 19,228).

The petitioner insists, in respect of the importation of the compound in question, that if, as compared with its use for other purposes, its chief or predominant use was for sheep dip, then it was not dutiable. Cases are cited by which the rule is determined that, as between two classifications carrying different duties, where the article is adapted to use within the language of either classification, it should bear the duty according to its chief or predominant use, and that that would be so even if the article might be used practically and generally for another purpose suitable to the other classification. Such are the cases of Hartranft v. Langfeld, 125 U. S. 128, 8 Sup. Ct. 732, 31 L. Ed. 672, and Meyer v. Cadwalader, 89 Fed. 963, 32 C. C. A. 456. In the former the question came up whether the article of importation should be classified under the clause of the act requiring a duty of 50 per cent. ad valorem on "all goods, wares, and merchandise not specially enumerated or provided for in this act, made of silk, or of which silk is the component material of chief value," or whether it should take the classification under another clause, namely, "hats and so forth, materials for: Braids, plaits, flats, laces, trimmings, tissues, willow-sheets, and squares, used for making or ornamenting hats, bonnets, and hoods, composed of straw, chip, grass, palm leaf, willow, hair, whalebone, or any other substance or material not specially enumerated or provided for in this act," upon which merchandise a duty of 20 per cent. ad valorem was assessable. It was held that, as the chief or principal use made of the importation was for hat trimmings and not for dress trimmings, although it was commonly used for the latter purpose, it was subject to classification under the latter clause, and to a duty of 20 per cent. ad valorem only. The other case cited is of the same nature. But are these cases so in point here as to be controlling? The language employed by paragraph 657 of the present statute, namely, "that can be used for other purposes," would seem to be restrictive rather than general. Concededly it could not have the same signification as if it read "used for other purposes"; and it was a condition of the latter character that the courts were considering in the cases cited. The doctrine of those cases is much older than the statute, as the Hartranft Case was decided in 1887, and presumably was familiar to Congress when it adopted this later statute. The most natural inference, therefore, is that it was the intendment of Congress that paragraph 657 should bear a more restricted construction than if the general language had been employed. See Swan & Finch Co. v. United States, 113 Fed. 243, 51 C. C. A. 200, where "common" or "predominant" use is controlled wholly by the condition "fit only for such uses." The paragraph came up for interpretation in the case of Wyman et al. v. United States in the Circuit Court for the Eastern District of Missouri (118 Fed. 202), wherein Adams, District Judge, after remarking that he was disposed to approve of the interpretation placed upon the act by the general appraisers in the case of In re Hulme, supra, says:

"This interpretation permits the admission of any preparation for sheep dipping free of duty when the preparation is, in the commercial sense, adapted

to and usually and generally employed for that purpose only. I take it that any preparation that is so adapted to that use and generally employed for that purpose should be admitted free of duty, even though it incidentally may be used for other purposes. If its main and very general purpose is for sheep dipping, it may be brought in free of duty; but if, as in the case at bar, the article is not only used as a sheep dip, but is a compound adapted to and is extensively used for other purposes, such as those just detailed, it is not an article admissible duty free."

The testimony in the present case does not show as large use for other purposes as was established in that case, but what is shown in that regard appears from a folder found with the evidence, making announcement as follows: "Cannon's Dip (nonpoisonous), sheep dip and cattle wash, for scab, lice, ticks, and all parasites, disinfectant for destroying all infection and contagion"—and contains instructions for use as a remedy for "hoose and tapeworm in calves, and worms in horses," and various diseases of horses and cattle. This suffices to show that the manufactured product was of commercial value for other uses than for dipping sheep. It is adaptable for such other uses, and presumably was actually used in that way. If not, why the advertisement? So that the facts here bring the case within the doctrine of the Hulme Case; and in my opinion that is as far as it was necessary for the government to go, notwithstanding the burden of proof was upon it to establish the fact that the article was subject to duty. Much of what Judge Adams has said in Wyman v. United States, supra, was spoken with reference to the facts of that particular case; and yet, from a careful analysis of his language, it would seem that it was his purpose to approve the doctrine as announced in the Hulme Case, and not to modify it in any particular.

Holding these views, it follows that the finding and judgment of the Board of Appraisers should be affirmed; and it is so ordered.