## DREW & Another v. GRINNELL & Another.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Submitted November 2, 1885.—Decided November 23, 1885.

Under § 8 of the act of June 30, 1864, ch. 171, 13 Stat. 210, imposing a duty of 60 per cent. on "silk laces," and a duty of 50 per cent. on "all manufactures of silk, or of which silk is the component material of chief value, not otherwise provided for," an article of silk and cotton, bought and sold as "spotted or dotted net," but which was a lace, in which silk was the component material of chief value, was a "silk lace," and subject to a duty of 60 per cent.

The facts which make the case are stated in the opinion of the court.

*Mr. William Stanley* and *Mr. Edwin B. Smith* for plaintiffs in error.

*Mr. Attorney-General* for defendants in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This action was brought by the plaintiffs in error, against the collector of the port of New York, to recover $17.50 as duties illegally exacted on an importation of merchandise into New York, from Liverpool, England, in 1869. At the trial, in 1881, the defendants, executors of the collector, had a verdict, on which there was a judgment in their favor, to review which this writ of error is brought. The question involved arose under § 8 of the act of June 30, 1864, ch. 171, 13 Stat. 210, which provided that, on and after the 1st of July, 1864, in lieu of the duties theretofore imposed by law on the articles thereinafter mentioned, there should be collected, on the merchandise enumerated in that section, the following duties: "On silk vestings, pongees, shawls, scarfs, mantillas, pelerines, handkerchiefs, veils, laces, sl.irts, drawers, bonnets, hats, caps, turbans, chemisettes, hose, mitts, aprons, stockings, gloves, sus-

penders, watch-chains, webbing, braids, fringes, galloons, tassels, cords, and trimmings, 60 per centum ad valorem. On all manufactures of silk, or of which silk is the component material of chief value, not otherwise provided for, 50 per centum ad valorem." The merchandise was invoiced and entered as "white cotton and silk spot net." The collector exacted a duty on it of 60 per cent., as being "silk laces." The importers contended that it was a manufacture of which silk was the component material of chief value, not otherwise provided for, and subject to a duty of 50 per cent.

The bill of exceptions contains the following statements: "Plaintiffs produced witnesses who testified that the merchandise in question was a manufacture made partly of silk and partly of cotton; that the ground of the fabric was silk and the spot upon it was cotton, but the fabric was made substantially of silk, and the article was universally bought and sold under the name of 'spot or dotted net,' and never by the name of 'silk lace;' and that there was, in 1864, and has been ever since that time, a well-known class of goods imported into this country, which was made wholly of silk, and other and different from the merchandise in question in this action, which was bought and sold under the name of 'silk lace.' Plaintiffs offered testimony tending to show that the fabrics commercially regarded as 'silk laces' were finished on one side in figures in the form of a scollop, as a rule, and having finished edges, and that lace edgings were known as 'silk laces;' that, among laces known as 'silk laces,' are Spanish laces, Pushee laces, blond laces; that all laces which are known in commerce as 'silk laces' are made on a machine; that there were minor classes of laces included in the general class of 'silk laces,' and each class is composed of several kinds of laces, which go by distinguishing names, so that, if a person should come into a store and ask for 'silk laces' it would not be possible to tell what particular silk lace he wanted until he should specify by its particular name the particular variety wanted; that there were different names for different kinds of nets, and, if a person should simply ask for net goods, it could not be ascertained what particular article he required until he mentioned its

specific distinguishing name; and that there were curtain nets, bobbinets, Brussels nets, Mechlin nets, zephyr nets, mohair nets, illusion nets, and a variety of others. But plaintiffs' witnesses, upon cross-examination, testified, that the term 'silk laces' was not a commercial term used to designate a particular article in trade, but was a general term, and that each particular silk lace had a specific trade name, such as Valenciennes, Bretonne, and a variety of other names. Plaintiffs' counsel having rested their case, the defendants' counsel called witnesses who testified, in behalf of the defendants, that they were, and had been for twenty years, wholesale dealers in, and importers of, silk laces, and were also wholesale dealers and importers of goods like the goods which were the subject of controversy in this action; that the term 'silk laces' was not generally regarded, in trade and commerce, in the United States, among wholesale dealers in and importers of laces, as a commercial term, used to designate any particular article of trade, but was generally understood to include all laces which were made wholly or substantially of silk; that each particular lace had a particular trade name; that the goods which were the subject of controversy in this suit were a particular kind of silk lace, called 'spotted or dotted net;' that they were made upon lace machines; that, in trade and commerce generally, in the United States, laces were understood to be delicate, thin ornamental net work, the meshes of which were formed by plaiting together threads of silk, cotton, or other material; and that the goods which were the subject of controversy in this suit corresponded with that definition."

Both parties having rested, the plaintiffs requested the court to direct a verdict for them. This was refused and they excepted.

They then requested the court to charge the jury as follows: "1st. That, if the jury find that goods such as those in question were not generally known among wholesale dealers in, and importers of, the articles, in buying and selling, at and prior to June 30, 1864 in our markets, under the commercial name of 'silk lace,' then the plaintiffs are entitled to recover. 2d. That, if the jury find that goods such as those in question

were generally known, among wholesale dealers in, and importers of, the article, in buying and selling, at and prior to June 30, 1864, in our markets, under the name of 'nets,' or 'spot nets,' or 'dotted nets,' or 'silk and cotton spot nets,' and not as 'silk laces,' then the plaintiffs are entitled to a verdict. 3d. That, testimony having been given and not contradicted, that the goods in suit were manufactures of silk and cotton, in which silk was the component material of chief value, the plaintiffs are entitled to recover, unless the goods were known in trade and commerce, in this country, by importers, as 'silk laces.' 4th. That, if the jury find that the goods were not commercially known, among wholesale dealers, in this country, as 'silk laces,' at the time of the passage of the act of June 30, 1864, plaintiffs are entitled to recover. 5th. That it is immaterial whether goods like plaintiffs' importations were or were not known as 'laces,' if they were not known commercially as 'silk laces.' 6th. That, plaintiffs having shown, without contradiction, that the articles in controversy were composed of silk and cotton, the presumption, in the absence of proof, would be, that the laces were not silk laces." The court, as to each proposition, refused so to charge, and the plaintiffs excepted to each refusal.

The court then instructed the jury " that, if the plaintiffs' importation was not a silk lace within the meaning of the act of June 30, 1864, the plaintiffs were entitled to recover; that it was a silk lace within the meaning of the act, if it was a lace of which silk was the component material of chief value, unless, at the time the act was passed, it was commercially known, by importers and dealers in such articles, in this country, as a different article; that, if it was commercially known as 'spot net' or 'dotted net' instead of 'lace,' it would fall under the clause relating to manufactures of silk, not otherwise provided for; but, if it was called by such name only to distinguish it from other varieties of silk lace, all silk laces being known by some particular name which distinguished one variety from the others, it was, nevertheless, a 'silk lace,' within the meaning of the act." There was no exception taken to any part of those instructions.

The jury having retired, came into court for further instructions, and the court charged them that the first clause of the 8th section imposed a duty of 60 per cent. " upon articles which were made all of silk, or which were made of silk and cotton, in which silk was the controlling element, if they were known among merchants as silk goods." To this charge the plaintiffs excepted.

We think the case was, in view of the evidence, fairly and properly presented to the jury by the court. The jury were, in substance, told, (1) that the plaintiffs were entitled to recover if the article was not a silk lace ; (2) that it was a silk lace, if it was a lace of which silk was the component material of chief value, unless at the time the act was passed it was commercially known here as a different article ; (3) that, if it was commercially known as "spot net" or "dotted net," it would fall under the 50 per cent. clause, but if it was so called as one of the varieties of silk lace, each of which had a particular distinguishing name, it was, nevertheless, a silk lace, within the meaning of the act.

The instructions asked for went upon the erroneous view, that an article could not be a silk lace, within the act, unless it was bought and sold by the commercial name of " silk lace." This was the substance of all the instructions asked. Although the article was composed of silk and cotton, yet, if silk was the component material of chief value, and it was a lace, and was known among merchants as a silk lace, it clearly fell within the 60 per cent. clause, although a lace wholly of silk also fell within that clause, as a silk lace. The evidence on both sides was to the effect that the term "silk laces" was not a commercial term for a particular article, but included all laces made wholly or substantially of silk, each particular lace having a particular trade name, and the article in question being a particular kind of silk lace, called "spotted or dotted net."

*Judgment affirmed.*