## HARTRANFT *v.* MEYER.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

No. 860. Argued April 11, 12, 1893. — Decided May 15, 1893.

Piece goods, commercially known and designated as " chinas " and " marcelines," which are chiefly used for *lining* hats and bonnets are dutiable at the rate of twenty per centum ad valorem under Schedule N of the tariff act of March 3, 1883, as materials " used for making . . . hats, bonnets, or hoods."

*Mr. Solicitor General* for plaintiff in error.[1]

*Mr. Frank P. Prichard* and *Mr. Joseph H. Choate,* (with whom were *Mr. Henry E. Tremain* and *Mr. Mason W. Tyler* on the brief,) for defendant in error.

MR. JUSTICE SHIRAS delivered the opinion of the court.

This was an action, brought by the firm of Meyer & Dickinson, in the Court of Common Pleas of Philadelphia, against

[1] For the argument of Mr. Solicitor General in this cause see *ante,* p. 540.

the collector of customs for that district, to recover duties which they allege to have been illegally assessed against certain articles imported by them. The action was certified to and tried in the Circuit Court for the Eastern District of Pennsylvania, and resulted in a verdict and judgment in favor of the plaintiffs. The collector sued out a writ of error, which is now prosecuted in this court by his executrix.

The issues that were tried in the court below arose under the tariff act of March 3, 1883. 22 Stat. 510, 512, c. 121. The imported articles consisted of " chinas " and " marcelines," the latter being made wholly of silk, and the former of silk and cotton, silk being the component material of chief value.

The position of the government was that such articles were dutiable under Schedule L of the act, at the rate of fifty per centum ad valorem, while the plaintiffs contended that they came under Schedule N, and were chargeable with duty at the rate of twenty per centum ad valorem.

The court below regarded the case as falling within the doctrine of *Hartranft* v. *Langfeld*, 125 U. S .128, and of *Robertson* v. *Edelhoff*, 132 U. S. 614, and accordingly referred it to the jury to find, under the evidence, whether the goods in question were trimmings, and what was their chief use.

A large number of witnesses were called on both sides. There was no dispute as to the composition of the goods, but there was conflicting evidence as to the extent of their use as hat trimmings. The testimony on behalf of the government tended to show that such goods were largely, and, according to some witnesses, chiefly used for purposes other than for hat and bonnet trimmings. The plaintiffs' witnesses testified that, while they were used to a limited extent for other purposes, their chief use was for trimming and lining hats and bonnets. A verdict was found and judgment entered in favor of the plantiffs.

If this case is not distinguishable in its facts from the cases above referred to, then a like conclusion must be reached as that announced in the case of *Cadwalader* v. *Wanamaker*, just decided, *ante*, p. 532, and for the same reasons, which we need not here repeat.

An attempt is made to distinguish the facts of the cases in the particular that whereas, in the other cases the imported goods were ribbons, and thus articles naturally fitted for hat and bonnet trimmings, in this case they are piece goods, bought and sold under the commercial designation of "chinas" and "marcelines," and chiefly used for *lining* hats and bonnets.

But an examination of the record shows that the judge of the trial court did not overlook the distinction supposed to be involved in the character of the imported articles. He stated to the jury that "undoubtedly the word 'trimmings,' as used in the clause relating to hats, and so forth, material for, includes ornamental appendages. But does it include nothing more? This you will determine upon a consideration of the whole evidence, and having regard also to the terms of the particular claim of the tariff act with which we are now dealing. The language of that clause as it relates to 'trimmings' is: 'Hats, and so forth, materials for, . . . trimmings, . . . used for *making* or ornamenting hats, bonnets, and hoods.' The use is not confined to ornamentation, but by the express words of the clause is for 'making' as well as ornamenting. . . . But aside from the matter of ornamentation you are to consider whether the lining of a hat, bonnet, or hood is not part of the construction or 'making' of the article within the meaning of the clause of the tariff act."

And again: "The evidence tends to show that chinas and marcelines are particularly adapted and intended to be used, and in fact are and long have been used, as inside appendages for hats, bonnets, and hoods, to trim and finish them, and that their substantial commercial value consists in that use. Are they or are they not trimmings according to the natural meaning of that word? This you will determine, taking into consideration all the evidence on the subject and having regard to the preponderating weight of the evidence. If you should find from the evidence that the articles here in question, chinas and marcelines, were not trimmings, that of course would make an end of the plaintiffs' case; but if you should find them to be trimmings, then the only remaining inquiry will be as to what their chief use is."

We are unable to see anything objectionable in these instructions, and the charge must be deemed a sound exposition of the law, if the previous decisions of this court, whose rulings the learned judge had in view, are to stand.

Conceding there is force in the views so ably urged in behalf of the government, for the reasons given in the case of *Cadwalader* v. *Wanamaker*, *supra*, we adhere to the conclusions reached in the cited cases, and the judgment of the court below is accordingly                                    *Affirmed.*

. MR. JUSTICE BREWER, with whom concurred MR. JUSTICE BROWN, dissenting.

With respect to these three cases, [No. 31, *ante*, 532, No. 151, *ante*, 541, and this case,] I desire to make these observations: The questions presented in them are not constitutional, nor even of general and permanent law, but relate only to the scope and meaning of certain statutory clauses now repealed, and which were in force for only a few years. While the amounts involved may be, as counsel contend, large, yet the questions are but of temporary and passing importance. Hence, after two decisions the questions should be considered as settled, and that, notwithstanding some of the present members have come on to the bench since those decisions, and may not concur in the views therein expressed.

The end of litigation, so much to be desired, is not fully satisfied by the close of the particular law suit, but implies that the question involved therein is settled; so settled, that all parties may adjust their dealings and conduct accordingly. A change in the personnel of a court should not mean a shift in the law. *Stare decisis* is the rule, and not the exception. Whatever, therefore, is within the letter or spirit of the two cases of *Hartranft* v. *Langfeld*, 125 U. S. 128, and *Robertson* v. *Edelhoff*, 132 U. S. 614, should be considered as having passed beyond the scope of present inquiry. For these reasons, considering the course of the trial and the rulings of the court, I concur in the decisions in the first two cases.

With regard to No. 860, I think that the facts and rulings

bring out a clear distinction. The importations in that case were chinas and marcelines, so described in the invoices, imported as piece-goods, in rolls or folds of from 75 to 125 yards in length, and from 18 to 31 inches in width. Are such goods trimmings? I think by no fair construction of the word can they in that condition be called trimmings. Confessedly they must come within these words of the statute: "Trimmings . . . used for making or ornamenting hats, bonnets, and hoods." The question of use, or chief use, does not arise until it is established that the goods are trimmings. This question was really not in the cases in 125 and 132 U. S., *supra*. In the opinion in the former it was said of the goods there in question: "That they were trimmings was not a matter of controversy; all the witnesses, on both sides, spoke of them as such." And in the latter: "On the trial the undisputed evidence was that the articles in question were used exclusively for trimming hats and bonnets, and had a commercial value only for that purpose." In neither case does it appear that any question was made as to whether the articles there imported were trimmings or not. But it was in this case, and such instructions asked and refused, as compel a determination of that specific question. The instructions and comments of the court are as follows:

"'1. If you believe that in March, 1883, chinas and marcelines were commercially known as "linings," and not "trimmings," then your verdict should be for the defendant.'

"This point is refused.

"'2. If you believe that the chinas and marcelines in suit were bought, sold, and used in trade in March, 1883, under those names, and were not commercially known as "trimmings," then your verdict should be for the defendant.'

"This point is refused."

"'6. If you believe that the chinas and marcelines in suit were not in the form of trimmings at the time of their importation, you must find for the defendant, although you should believe that they were suitable and adapted by their nature and qualities to be made into hat trimmings.'

"This point is refused. This point which I have just read.

and the next one embody the proposition advanced by defendant's counsel and discussed by them before the jury that the chinas and marcelines here in question cannot be regarded as within the term 'trimmings' as employed in the act of Congress, because they are imported by the piece, and before the material is actually applied to use in the making or ornamenting of hats, bonnets, and hoods the pieces have to be cut into smaller pieces and made into certain forms.

"But the court cannot accept this view as correct, and I instruct you that hat materials which are imported by the piece are 'trimmings' within the meaning of the act of Congress if they are distinctively adapted and, in fact, are chiefly used for trimming hats, bonnets, and hoods, and are not specially enumerated or provided for in the act.

"'7. The jury are instructed that there is a distinction properly to be made between "trimmings" and materials out of which to manufacture trimmings, and if the articles in suit are not trimmings in the sense of being completely fabricated as such, but required skill and labor to cut, fit, fold, sew or fashion them into trimmings, then they must find for the defendant.'

"You will understand that I am asked to instruct you in this way; this is the proposition which counsel hand me to affirm. I decline to give you that instruction, and I have given you the contrary instruction. The point is refused."

Now, I am of the opinion that these goods were, in the condition in which they were imported, not trimmings. I concede that if they had a commercial designation as such, that would be sufficient within many rulings of this court, but the testimony does not establish that fact, and the refusal of the first two instructions eliminates that matter from present consideration. That being eliminated, it does not seem to me that these goods, when and as imported, legitimately fall within the ordinary meaning of the word "trimmings." The idea of trimmings is of something cut up or prepared ready for present use in the ornamentation or making of hats, bonnets, etc. Concede that these rolls or folds of cloth were generally used for cutting up into trimmings, they

were not, while in the piece, fairly to be denominated "trimmings." Take other piece goods, bolts of linen or cotton cloth, suppose that some of them were used mainly, or even exclusively, for cutting up into handkerchiefs, napkins, or towels — would any one suppose that the terms handkerchiefs, napkins or towels when used with statutory precision, were intended to include or did include the cloth imported in bolts? Were the language cloth for handkerchiefs, etc., or material for handkerchiefs, etc., doubtless such expressions would include the cloth in bolts. So here, if the statute named cloth or material for trimmings, the conclusion would be different; but where the word is simply "trimmings," I take it to mean that which at the time of importation and in the condition in which it is imported is ready for immediate use as trimmings, and not that which is to be cut up into trimmings. Or, to carry the illustration farther, could hickory logs be called "wooden toothpicks," because when cut up into little pieces they may be used as such; or would ivory fall under the designation of piano keys, because when sawed into proper shape it is used for that purpose?

Indeed to my mind the word "trimmings" carries necessarily this idea: something in size, form, or condition fit and ready for present use in the making or ornamentation of hats, bonnets, or other such articles.

For these reasons I cannot concur in the decision in the latter case.

I am authorized to say that MR. JUSTICE BROWN concurs in this opinion.