LOEWENTHAL *v.* UNITED STATES (No. 499). SUNDHEIMER *v.* UNITED STATES (No. 500).[1]

NARROW SILK FABRICS SHOWING ORIGINAL DESIGNS.

Trimmings were provided for *eo nomine,* in paragraph 390, tariff act of 1897. The testimony shows that silk fabrics such as those imported, ½ to 1¼ inches in width, with original designs thereon, are known commercially as trimmings; and they fell within the *eo nomine* description, although the term is a comprehensive one and may include articles that are sometimes designated by a name more re-stricted in meaning. The importation was dutiable under paragraph 390, tariff act of 1897.—Sidenberg *v.* Robertson (41 Fed. Rep., 763); Naday *v.* United States (164 Fed. Rep., 44).

## United States Court of Customs Appeals, May 8, 1911.

APPEAL from the United States Circuit Court for Southern District of New York, G. A. 6909 (T. D. 29761).

[Affirmed.]

*Comstock & Washburn (Albert H. Washburn* and *Geo. J. Puckhafer* of counsel) for appellants.

*D. Frank Lloyd,* Assistant Attorney General (*Martin T. Baldwin* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The two cases were heard together, and involve merchandise which consists of narrow woven silk fabrics from half an inch to 1¼ inches in width showing original designs in various colors and patterns. They were assessed for duty at the rate of 60 per cent ad valorem under paragraph 390 of the act of 1897. They are claimed to be dutiable at the rate of 50 per cent ad valorem under paragraph 391 of the same act.

The material portions of the paragraphs in question are as follows:

390. Laces, and articles made wholly or in part of lace, edgings, insertings, galloons, chiffon or other flouncings, nets or nettings and veilings, neck rufflings, ruchings, braids, fringes, trimmings, embroideries and articles embroidered by hand or machin-ery, or tamboured or appliqued, clothing ready made, and articles of wearing apparel of every description, including knit goods, made up or manufactured in whole or in part by the tailor, seamstress, or manufacturer; all of the above-named articles made of silk, or of which silk is the component material of chief value, not specially pro-

---

vided for in this act, and silk goods ornamented with beads or spangles, of whatever material composed, sixty per centum ad valorem.  *  *  *

391. All manufactures of silk, or of which silk is the component material of chief value,  *  *  *  not specially provided for in this act,  *  *  *  fifty per centum ad valorem.

The Board of General Appraisers held the articles to be properly dutiable as trimmings under paragraph 390. The importers appealed to the United States Circuit Court, Southern District of New York, where the decision of the board was affirmed. From that affirmance the importers now appeal to this court.

A similar case arose in 1902 and 1903 involving narrow ornamental silk fabrics, and was considered by the Circuit Court in Naday & Fleischer v. United States (155 Fed. Rep., 303), and again, on appeal, by the Circuit Court of Appeals of the Second Circuit, and is reported under the title of Naday & Fleischer v. United States (164 Fed Rep., 44). In these two decisions the importation was held dutiable under paragraph 390. The Board of General Appraisers expressly found as a fact that the goods in this case did not differ from those in the Naday & Fleischer case, and this finding was affirmed by the Circuit Court.

The question there adjudicated is renewed in this case, and it is sought to differentiate the present case from that in this: The contention is made that the word "trimmings" had come to have, prior to the enactment of the statute in 1897, a narrow meaning which limits its application to merchandise which is made up into trimmings by the seller from such articles as those imported in these cases, and does not include articles which are used as trimmings. A careful examination of the record in the case has satisfied us that the finding of the Board of General Appraisers is not only justified but is supported by an overwhelming weight of the testimony.

The witnesses for the importer testify that the word "trimmings" describes the goods in question. As an illustration, the witness Max Sundheimer, one of the importers, testifies, in answer to the questions:

Q. And, as far as you know, goods of this class that we have before us have always been considered by the trade as trimmings?—A. No; a great many call them ribbons.

[The question was ordered re-read.]—A. By trimming buyers; yes.

In another place he testifies:

Q. *  *  *  I want to know what are the goods that you referred to when you said you were a dealer in trimmings?—A. Anything a woman can use in trimming.

Q. Such goods as we have here?—A. That is one of a few articles; yes, sir.

*          *          *          *          *          *          *

Q. Is the word "trimmings" a commercial word that is understood by the trade?— A. "Trimmings" is such a general article. Groceries. If a man goes in a grocery store it is some certain thing he wants.

Q. Do you know whether the trade understands what is meant by the word "trimmings" ?—A. A trimming is a great quantity of articles.

Without quoting from other witnesses, it is enough to say that the effort to show that "trimmings" is not a commercial term evidently rested upon the idea that articles which are in fact trimmings and are known to the trade as such consist of a variety of articles which may be given a name in the trade more specific, and which nevertheless fall under the trade designation of trimmings. It is not claimed in this case that section 391 described *eo nomine* the importations in question. We think a very good statement of the law is contained in the charge of Lacombe, Judge, in Sidenberg *v*. Robertson (41 Fed. Rep., 763), from which we quote:

The plaintiff has to cover with his trade evidence both descriptions of words—the words under which the laces are actually bought and sold, and also the word or words under which he claims that they are not known. Of course, if the particular word or phrase by which they were bought and sold were one of the phrases or words in the tariff act, as soon as he had proved that the articles were bought and sold, and known in commerce by that word or phrase, he would have proved his whole case. But where the particular word, the trade meaning of which he proves is not in the tariff act, and that instrument contains only general words, he must go further, and prove not merely that the articles are bought by one particular trade name, but that the general words used in the tariff act, which otherwise would cover them, do not cover them in trade and commerce.

Applying this language to the present case, it is incumbent upon the importers to show that although these importations may in some instances be known as ribbons or other specific name, yet if they are in fact also known to the trade as trimmings, the importer has failed to make his case. See also *In re* Herrman (56 Fed. Rep., 477); Drew *v*. Grinnell (115 U. S., 477); and *In re* McGibbon, G. A. 6147 (T. D. 26692).

We do not overlook the contention of the importers' counsel that the word "trimmings" is used by dealers as a descriptive term rather than as a trade term. But it is a sufficient answer to say that we are convinced from the testimony that in the sense in which a broad trade term may be given effect, this term is shown to be one used in the trade within the meaning of the cases above cited. Nor can we accept the view of the importers that the word "trimmings" has been given a restricted meaning in the trade which excludes the articles in question here.

We do not know of any reason for departing from the rule laid down in the Naday & Fleischer case or for overturning the finding of fact by the Board of Appraisers and by the Circuit Court in this case, and it follows that the decision of the Circuit Court should be *affirmed*.