ROBINSON-GOODMAN CO. (INC.) *v.* UNITED STATES (No. 3186)[1]

United States Court of Customs and Patent Appeals, June 20, 1929

*Gibboney, Johnson & Flynn* (*Henry Alan Johnston, Breckinridge Long,* and *William A. Rodenberg* of counsel) for appellant.

*Charles D. Lawrence,* Assistant Attorney General (*Oscar Igstaedler,* special attorney, of counsel), for the United States.

*Thomas J. Doherty, amicus curiæ.*

[Oral argument May 21, 1929, by Mr. Rodenberg, Mr. Johnston, Mr. Lawrence, and Mr. Doherty]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, second division, rendered after a new trial had pursuant to a mandate of this court reversing a former judgment to the same effect as the one now appealed from (16 Ct. Cust. Appls. 243, T. D. 42842).

The merchandise involved is artificial flowers, and the question to be determined is its proper classification.

It was classified under paragraph 1430 of the Tariff Act of 1922, the appraiser describing it as consisting of "trimmings or ornaments

---

[1] T. D. 43473.

in the form of flowers, fruits, or leaves, suitable for dress or millinery use, composed of silk, cotton, metal or other yarns, threads or filaments," and duty was assessed thereon at 90 per cent ad valorem.

The appellant protested the dutiable classification by claiming that the merchandise is properly dutiable at 60 per centum ad valorem under paragraph 1419 of the said act.

The pertinent parts of the two paragraphs are as follows:

PAR. 1430. Laces, lace window curtains, burnt-out laces, and embroideries capable of conversion into burnt-out laces, nets and nettings, embroidered or otherwise, veils, veilings, flouncings, all-overs, neck rufflings, flutings, quillings, ruchings, tuckings, insertings, galloons, edgings, trimmings, fringes, gimps, ornaments; braids, loom woven and ornamented in the process of weaving, or made by hand, or on any braid machine, knitting machine or lace machine; and all fabrics and articles composed in any part, however small, of any of the foregoing fabrics or articles; all the foregoing, finished or unfinished (except materials and articles provided for in paragraphs 920, 1006, 1404, 1406, and 1424 of this Act), by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of yarns, threads, filaments, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or products of cellulose provided for in paragraph 1213 of this Act, 90 per centum ad valorem;  *  *  *.

PAR. 1419.  *  *  *  artificial or ornamental fruits, vegetables, grains, leaves, flowers, and stems or parts thereof, of whatever material composed, not specially provided for, 60 per centum ad valorem;  *  *  *  boas, boutonnières, wreaths, and all articles not specially provided for, composed wholly or in chief value of any of the  *  *  *  flowers, leaves, or other material herein mentioned, 60 per centum ad valorem.  *  *  *

The court below overruled the protest, sustained the collector's dutiable classification, and entered judgment accordingly, upon the authority of *Blumenthal & Co. et al.* v. *United States*, 14 Ct. Cust. Appls. 17, T. D. 41531. The importer appealed to this court, assigning, among other things, error in the court below in excluding testimony offered by it, particularly in regard to whether the component material of the merchandise in question excluded it from classification under paragraph 1430.

This court found reversible error in excluding testimony offered, and remanded the case for a new trial. In its opinion, this court stated:

The excluded evidence was admissible. It tended to establish that the component material of the exhibits was not any one of the materials to warrant classification under paragraph 1430. Its purpose was not to show the chief value of any component, but was to show what in fact such component was.

Thereafter many other offers of evidence were made on behalf of the importer, which were excluded on the objection of the Government, concerning which error is alleged here. To consider them all in this opinion would extend it to an unreasonable length. Among them was an offer to prove that the artificial flowers involved in this case were not trimmings or ornaments, another that they were made out of woven cloth, another that trimmings and ornaments were certain specific things, dealt with as such in the wholesale trade throughout the United States prior to and since 1922, and did not include artificial flowers.

We are unable to see why, as the case stood before the court below, such evidence was not admissible, but refrain from discussing the issues raised thereby because we are clear that the exclusion of the evidence covered by the first offer was reversible error.

Upon the retrial of the case, much testimony was introduced by the appellant in support of its contentions. The Government placed no witnesses upon the stand, but introduced in evidence the record in the case of *Blumenthal* v. *United States, supra.*

The lower court expressly found that all of the merchandise was generally and uniformly known and designated in the trade as artificial flowers, and not as trimmings or ornaments; that much of the merchandise in question is used, and that it is all capable of being used, as trimmings or ornaments on hats, wearing apparel, dresses, cushions, and various other things; that the merchandise is composed in chief value of velveteen, plush, silk taffeta, satin, or sateen, and these various fabrics are woven of yarns, threads, or filaments, and therefore, under the ruling of this court in the case of *Kayser & Co.* v. *United States,* 13 Ct. Cust. Appls. 474, T. D. 41367, the merchandise in question was composed of yarns, threads, or filaments within the meaning of paragraph 1430.

Upon these facts found by the court, it was held that the decision of this court in the case of *Blumenthal* v. *United States, supra,* governed the case, and judgment was entered for the defendant, overruling the protest. From such judgment this appeal is taken by the importer.

Appellant contends that the decision in the *Blumenthal* case does not govern the case at bar, asserting that none of the evidence in that record tends to contradict the evidence in this case; that the evidence in the present case establishes that artificial flowers and trimmings and ornaments are each specific things, and that each is a distinct class of merchandise universally recognized in the trade and commerce of the United States at the time of the passage of the Tariff Act of 1922, and for many years prior thereto; that the terms "trimmings" and "ornaments" do not now and never have included artificial flowers such as the merchandise involved in this case; that there are "trimmings" and there are "ornaments" which are known by other names than those mentioned specifically in paragraph 1430; that artificial flowers are not made out of yarns, filaments, threads, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or artificial silk yarn; that the proof establishing the facts contended for by the appellant was not present in the *Blumenthal* case, and therefore the two cases must be distinguished.

Appellee contends that the merchandise in question is of the same character as that involved in the *Blumenthal* case, and that the decision of this court in that case should be followed herein. It was

established upon the trial that the merchandise here in question is of the same character as that involved in the *Blumenthal* case.

In the *Blumenthal* case this court found that all of the goods there in question, as they crossed the customs line, are available for use, and are actually used, as trimmings for hats, corsages, fur pieces, and ladies' coats. In this case, the lower court found that much of the merchandise is used, and that it is all capable of being used, as trimmings or ornaments on hats, wearing apparel, dresses, cushions, and various other things. This finding is established by the evidence.

In the *Blumenthal* case this court found that it was established without contradiction that the merchandise there in question was composed in chief value of textile yarns, threads, or filaments. In the case at bar it is contended by appellant that the proof shows that the merchandise here in question was not so composed, but the lower court has found that, under the ruling of this court in *Kayser* v. *United States, supra,* the merchandise was composed of yarns, threads, or filaments. We adhere to the ruling in the *Kayser* case, and the evidence establishes the fact found by the lower court in this respect.

The first question to be considered is whether this case is distinguishable from the *Blumenthal* case so far as the facts proved are concerned. Appellant points out that in the *Blumenthal* case no evidence was adduced to show what are trimmings and ornaments as these terms are used in trade and commerce; that no evidence was offered in that case to show that, in addition to these words being specific, there are things known by other names which are similar in kind and character to the things specified in paragraph 1430, and which are imported and dealt with at wholesale under the general name of trimmings and ornaments, and which are thus covered by the words "all the foregoing   *   *   *   by whatever name known." That such evidence was absent in the *Blumenthal* case and was adduced in the present case is a fact. Appellant also points out that the legislative history of paragraph 1430 was not introduced in the *Blumenthal* case but is a part of the record in this case.

The case turns upon the definition of the words "trimmings" and "ornaments." It is very evident that in the *Blumenthal* case this court applied the ordinary meaning of these terms as defined in the dictionaries, and upon the record in that case it was justified in so doing, there being no proof of commercial designation restricting the ordinary meaning of these words. The court below in this case has also applied the ordinary or common meaning of the words. There is, however, in this case that which was absent in the *Blumenthal* case—proof of commercial designation of the words "trimmings" and "ornaments," at the time of the passage of the Tariff Act of 1922. It requires no citation of authority to the point that if commercial

designation is found to exist, such designation fixes the character of the article for the purposes of the tariff law, unless a different legislative intent is shown.

The designations of merchandise covered by paragraph 1430 are followed by these words: "all the foregoing * * * by whatever name known and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of yarns, threads, filaments * * * 90 per centum ad valorem." It is clear that the phrase "by whatever name known" is limited by the phrase "all the foregoing"; so that, before there can be any application of the phrase "by whatever name known" to the words "trimmings" and "ornaments," the meaning of these words as used in the paragraph must first be ascertained. If there be in fact a restricted meaning of these words as used in commerce and trade, the phrase "by whatever name known" does not enlarge the class, but serves to include within the class every article comprehended by these terms as used in commerce and trade, regardless of the fact that such articles may have other and different commercial designations. The record in this case convinces us that the words "trimmings" and "ornaments" did not in commerce and trade, at the time of the passage of the Tariff Act of 1922, have the same meaning as is given to those terms by dictionary definitions. In support of this statement, the following testimony produced at the trial in the court below is quoted:

Joseph Englander, a witness on behalf of the appellant, testified as follows:

Q. Do you know what trimmings are, Mr. Englander?—A. I know what trimmings are known to the trade as.

Q. We are speaking of the trade meaning of the word?—A. Yes, sir.

The witness was then shown a number of articles which he testified were known to the trade as trimmings or ornaments. He then testified:

Q. Mr. Englander, are there any other articles which are dealt with in the trade in this country as trimmings or ornaments which have the names other than the names which I read to you from paragraph 1430?—A. I believe there are some other materials that have been used as trimmings and ornaments not included in paragraph 1430.

Q. For example, paragraph 1430 doesn't use the word "motif." You said a motif is an ornament?—A. Yes.

Q. It is dealt with as an ornament?—A. No, it is dealt with as a motif.

Q. But it is an ornament?—A. We called them ornaments at that time.

Q. Can you think of any others?—A. Baby yoke; is that included there?

Q. Yokes are not mentioned here?—A. Baby yoke might be used as a trimming.

Q. Passementeries?—A. They are also trimmings.

Q. What are medallions?—A. Medallions; these are also known as medallions. When separated that is called a medallion.

Q. Mr. Englander, are the articles that you mentioned like baby yokes, passementeries, motifs, and medallions imported and dealt with generally in the trade and commerce of this country as trimmings and ornaments?—A. They are dealt with as motifs, medallions, or if they are a colored trimming like that, it would come under the heading of trimming motifs, which is an embroidery.

Q. Is the motif the same as an ornament?—A. In my understanding it is.

Q. Then these things, are they in the general category of trimmings and ornaments?—A. Yes, sir.

### On cross-examination, the witness testified as follows:

Q. Now you have testified certain articles shown you are trimmings, did you not?—A. They are known to the trade as trimmings.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

Q. So then some of these articles, in your opinion, are trimmings because they are used as trimmings?—A. No, they are known as trimmings.

### The witness further testified:

Commercially I would not call it a trimming commercially, just because it is used as a trimming, they are used for trimmings.

Q. Does that make them trimmings?—A. No, that don't make them trimmings, they are known as trimmings.

### Charles T. Riotte, a witness on behalf of the appellant, testified as follows:

Q. From 1918 to 1922 you knew what were trimmings and ornaments, what were dealt in in the wholesale trade and commerce of this country as trimmings and ornaments?—A. Yes.

Q. You were familiar with that class of merchandise?—A. Yes.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

Q. During the time from 1918 until to-day, are trimmings and ornaments specific things dealt with as such in the wholesale trade throughout the United States?—A. It is a broad general term which embraces a great variety of articles. It is a complete line of various items, but there is a distinct trade which deals or which is known as the trimming trade.

Q. Well, do the designations in the trade, "trimmings" and "ornaments," include artificial flowers?—A. No.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

Q. Do you know of any articles which are generally classified as trimmings which are not mentioned by name in paragraph 1430?—A. Well, there are a great many trade designations which refer to a specific item, which, while falling in the general classification of trimmings, have in addition thereto an additional name, such as passementerie, which is used in the trade frequently. There is a rosebud trimming; so there are a great many words which are used to designate some specific item, but all fall within the general class of trimmings.

Q. I show you illustrative Exhibit KK, what is that?—A. Rosebud trimming.

Q. How is that sold?—A. By the yard.

Q. Is that article known in the trade and commerce of this country as an artificial flower?—A. No.

### Joseph Mittelmark, a witness on behalf of the appellant, testified as follows:

Q. Mr. Mittelmark, do you know what trimmings and ornaments are?—A. Yes, sir.

Q. Are trimmings and ornaments a specific kind of merchandise?—A. They are.

Q. Dealt with as such?—A. They are.

Q. Throughout the wholesale trade and commerce of this country?—A. They are.

Q. Was that a fact prior to 1922?—A. It was.

Q. Do you know what artificial flowers are?—A. I do.

Q. Are artificial flowers a distinct and separate class of merchandise?—A. They are.

Q. Dealt in as such?—A. They are.

Q. I hand you illustrative Exhibit AB, will you tell me what those articles are?—A. Medallions or a motif.

Q. Are they ornaments?—A. These are ornaments.

Q. Are medallions and motifs another name for ornaments?—A. Yes, another name for ornaments.

Q. In other words, medallions and motifs are ornaments by some other name?—A. That is right.

Q. I hand you illustrative Exhibit OO, what are those articles?—A. Braids.

Q. Are they known by another name?—A. Well, they are commonly known as braids. You might call them appliqué.

Q. Would you call them anything else?—A. Trimming.

Charles E. Turk, a witness on behalf of the appellant, testified that he was an importer of dress trimmings and had been engaged in such business at wholesale for 23 years. Witness produced a number of articles which he identified under different names, such as bead ornaments, tinsel braid, motifs, etc., after which he was asked the following questions:

Mr. Turk, are all these articles which you have identified and which have been introduced in evidence here, generally known in the trade of this country as trimmings and ornaments?—A. Yes.

Q. Have they always been known, since you have been in business and dealt with, as trimmings and ornaments?—A. Yes.

Q. Are you familiar with the business known as the artificial flower business?—A. Yes.

\*      \*      \*      \*      \*      \*      \*

Q. Is that business separate and distinct from your line of business?—A. Exactly.

\*      \*      \*      \*      \*      \*      \*

Q. Will you please again state why in your opinion an artificial flower does not conform to the characteristics which you say apply to a trimming?—A. Because it was never recognized in our particular business as a trimming.

Appellant produced a number of other witnesses who testified substantially to the same effect as the foregoing.

In *Acker* v. *United States*, 1 Ct. Cust. Appls. 328, T. D. 31431, this court, in discussing the question of commercial designation, said:

The further requisite, however, is necessary in assigning to a phrase a commercial limitation or application that it must be proven not alone that the imported merchandise is not classed therewithin, but there must be assigned by proof to that phrase a scope and meaning which is clearly, definitely, and uniformly understood throughout the United States which includes some other

merchandise and excludes the imported merchandise. *Claflin* v. *Robertson,* 38 Fed. Rep. 92; *Sidenberg* v. *Robertson,* 41 Fed. Rep. 763. It likewise must be shown in such cases that such meaning of the phrase in trade and commerce should differ from the ordinary dictionary meaning or that of common speech. *Maddock* v. *Magone,* 152 U. S. 368.

We believe the evidence in this case clearly brings it within the rule laid down by this court above quoted.

There was no proof of this character in the *Blumenthal* case, and holding as we do that commercial designation has been proved in the present case, it is our duty to give to the words "trimmings" and "ornaments" the meaning that they had in trade and commerce at the time of the passage of the Tariff Act of 1922.

In the case of *Nady & Fleischer* v. *United States,* 164 Fed. 44, the Circuit Court of Appeals, Second Circuit, construing paragraph 390 of the Tariff Law of 1897, which covered many articles embraced in the present paragraph 1430 of the 1922 Act, held:

In our opinion the word "trimmings" in the paragraph cited is not used in a descriptive sense. The cases relied upon such as *Hartranft* v. *Meyer,* 149 U. S. 544, 13 Sup. Ct. 982, 37 L. Ed. 840, construing the act of 1883, are not controlling, because the paragraph therein construed contained the phrase "used for making or ornamenting hats, bonnets, and hoods." The *eo nomine* designation should be given the meaning it has in trade and commerce.

This case was expressly approved by this court in the case of *Loewenthal* v. *United States,* 2 Ct. Cust. Appls. 43, T. D. 31592.

If artificial flowers are trimmings or ornaments within the meaning of paragraph 1430, then the fact that they are known in commerce and trade as artificial flowers and not as trimmings or ornaments would be immaterial, for in such case the language, "by whatever name known," etc., would be sufficient to bring them within the provisions of paragraph 1430; but if, as we hold the proof in this case establishes, the words "trimmings" and "ornaments," as used in commerce and trade at the time of the passage of the Tariff Act of 1922, were specific things and did not include artificial flowers, the phrase "by whatever name known" has no application to such flowers, because they are not brought within the class to which the phrase applies. The proof in this case shows that there are many articles coming under the terms "trimmings" and "ornaments," as used in trade and commerce, but which also have other names more specific, such as passementerie, motifs, medallions, rosettes, etc., and it seems clear that the intention of Congress in using the phrase "by whatever name known" was to bring articles of this kind within paragraph 1430, which were known to the trade as "trimmings" and "ornaments," even though they may have also a more specific designation.

We are therefore compelled to hold that the words "trimmings" and "ornaments," as used in trade and commerce, do not include artificial flowers, and did not at the time of the passage of the Tariff

Act of 1922, and therefore such articles are not dutiable under the provisions of paragraph 1430, but are dutiable under paragraph 1419. Had the proof in this case upon the meaning of the words "trimmings" and "ornaments" been the same as in the *Blumenthal* case we should have adhered to our ruling in that case; but the proof in this case showing, as it does, a commercial designation restricting the ordinary meaning of these words, which was not shown in the *Blumenthal* case, we are led to a different conclusion as to the classification of artificial flowers.

The conclusion we have reached is in accord with the decision of the Supreme Court in the case of *Pickhardt* v. *Merritt*, 132 U. S. 252. That case involved the classification of certain dyes or colors. They were classified by the collector under a provision of section 2504 of the Revised Statutes, which read as follows: "Paints and dyes—aniline dyes and colors, by whatever name known." The plaintiff claimed that the articles were not in fact aniline dyes, and should have been classified under another section carrying a lower rate of duty. He objected to the admission of evidence to show the signification of the words "aniline dyes and colors" as a commercial term in contradistinction to a descriptive term. In its opinion the court said:

> The court instructed the jury that if the four articles in question, according to the understanding of commercial men, dealers in and importers of them, would when imported "be included in the class of articles known as aniline dyes, by whatever name they had come to be known," they were subject to duty as aniline dyes, and the defendant was entitled to a verdict. We see no objection to this instruction. It was in accordance with the established rule that in interpreting customs statutes commercial terms are to be construed according to the commercial understanding in regard to them.

So as to the merchandise here in question, if at the time of the passage of the Tariff Act of 1922 artificial flowers, according to the understanding of commercial men, dealers, and importers of them, would when imported be included in the *class* of articles known as "trimmings" or "ornaments," by whatever name they had come to be known, they were subject to duty as trimmings or ornaments under paragraph 1430, but if not included in the *class* of articles known as "trimmings" or "ornaments," they were subject to duty under paragraph 1419.

We do not think that the conclusion here reached is in conflict with the decision of this court in the case of *Kotzin Bros. et al.* v. *United States*, 14 Ct. Cust. Appls. 99, T. D. 41589. In that case the language construed was the phrase "articles or fabrics embroidered in any manner by hand or machinery," in which it was held that commercial designation of the phrase was excluded. In that case Congress clearly expressed its intent that any article embroidered in any manner should be subject to the rate of duty provided. That the articles there in question were in fact embroidered was established,

and in view of the express language of the statute, whether or not they were known in trade and commerce as embroidered articles was immaterial.

The judgment is *reversed* and the cause *remanded* for proceedings consistent with the views herein expressed.

BLAND, J., specially concurring: In concurring with Judge Lenroot's opinion, I do so upon the express grounds that I am convinced from the record and the various recognized authoritative definitions of the words "trimmings" and "ornaments" that, both commonly and commercially, artificial flowers are not included within the term, and that Congress did not use the words "trimmings" and "ornaments" in the broad sense as meaning anything that trims or ornaments.

The dictionary speaks of "turkey trimmings," "educational trimmings," and we know of many other kinds of trimmings. Congress in using the words could not have had their broadest meanings in mind.

In the tariff sense, "trimmings" and "ornaments," commonly and commercially, are specific things. Artificial flowers is another class of specific things. The history of the artificial-flower paragraph shows this to be true.

The phrase "by whatever name known," which has been held to preclude the proof of commercial designation, could only preclude the proof of commercial designation being controlling, if the words "trimmings" and "ornaments" actually covered the merchandise involved; that is, if the importation was in fact not "trimmings" or "ornaments," there could be no possible opportunity for the operation of the phrase.

To give the words "trimmings" and "ornaments" the meaning urged by the Government, and to permit the application thereto of the phrase "by whatever name known," results in the classification within paragraph 1430 of such articles as necklaces made of beads and ribbon because they ornament and trim and are composed of either beads or threads. Of course, Congress never intended that beads, ribbons, and many other like articles should be drawn within the paragraph by the operation of the phrase "by whatever name known."

The opinion of Judge Lenroot shows what Congress had in mind by the use of the term "by whatever name known" and points out that full operation for the phrase on every article mentioned in the paragraph is permitted regardless of the conclusion in the case at bar.

DISSENTING OPINION

HATFIELD, Judge: I regret that I am unable to concur in the views expressed by a majority of my associates.

Artificial flowers, composed in chief value of textile yarns, threads, and filaments, were assessed for duty as "trimmings" and "ornaments" at 90 per centum ad valorem under paragraph 1430 of the Tariff Act of 1922.

It is claimed by appellant that they are properly dutiable under paragraph 1419.

The statutes involved are as follows:

PAR. 1430. Laces, lace window curtains, burnt-out laces and embroideries capable of conversion into burnt-out laces, nets and nettings, embroidered or otherwise, veils, veilings, flouncings, all-overs, neck rufflings, flutings, quillings, ruchings, tuckings, insertings, galloons, edgings, trimmings, fringes, gimps, ornaments; braids, loom woven and ornamented in the process of weaving, or made by hand, or on any braid machine, knitting machine, or lace machine; and all fabrics and articles composed in any part, however small, of any of the foregoing fabrics or articles; all the foregoing, finished or unfinished (except materials and articles provided for in paragraphs 920, 1006, 1404, 1406, and 1424 of this Act), by whatever name known and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of yarns, threads, filaments, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or products of cellulose provided for in paragraph 1213 of this Act, 90 per centum ad valorem; * * *.

PAR. 1419. * * * artificial or ornamental fruits, vegetables, grains, leaves, flowers, and stems or parts thereof, of whatever material composed, not specially provided for, 60 per centum ad valorem; * * * boas, boutonnières, wreaths, and all articles not specially provided for, composed wholly or in chief value of any of the * * * flowers, leaves, or other material herein mentioned, 60 centum ad valorem: * * *.

It is not denied that merchandise of the character of that here involved was before this court in the case of *Blumenthal & Co. v. United States,* 14 Ct. Cust. Appls. 17, T. D. 41531. In that case it was held that as those artificial flowers were suitable for use and were used as "trimmings and ornaments for hats, corsages, fur pieces, and ladies' coats" they were dutiable under paragraph 1430. In reaching this conclusion the court said:

Consequently, if relative specificity could be held to be determinative of the competition between the two paragraphs here involved, there would be no legal alternative left except to subject the merchandise to the duty of 60 per cent ad valorem as prescribed by paragraph 1419. The rule that an *eo nomine* designation must be preferred where goods are within the terms of two or more paragraphs carrying different rates of duty can not, however, be applied in this case without ignoring the manifest intention of Congress clearly and unmistakably expressed in paragraph 1430. That paragraph provides that trimmings and ornaments *by whatever name known and to whatever use applied whether or not named, described or provided for elsewhere in the act, shall be subjected to a duty of*

*90 per cent ad valorem.* By that language Congress left no doubt as to its intention, and, consequently, rules of construction or interpretation can not be invoked to give to the statute a meaning other than that which its terms clearly and plainly import.

In concluding the opinion, we said:

As Congress has seen fit to direct in unmistakable terms that the duty imposed by paragraph 1430 shall be imposed on all trimmings and ornaments made of textile threads, yarns, or filaments, regardless of any other provisions of the act, we must yield to the legislative will so plainly expressed and hold that the importations are dutiable as assessed, notwithstanding their enumeration in paragraph 1419.

The term "trimming" is defined by the lexicographers as follows:

Trimming, n. 1. Something added for ornament or to give a finished appearance or effect; that which embellishes or completes: (1) Material attached to a garment, etc., for ornamentation or effect.—Funk & Wagnalls New Standard Dictionary.

Trimming, n. 3. Anything used for decoration or finish; an ornamental fitting of any sort: * * *.—The Century Dictionary and Cyclopedia.

Trimming, n. 2. That which serves to trim, make complete, ornament, or the like; esp., necessary or ornamental fittings or appendages, as of a garment; * * *.—Webster's New International Dictionary.

The term "ornament" is defined as follows:

Ornament, n. 1. A part or an addition that contributes to the beauty or elegance of a thing; an embellishment; adornment; * * *.—Funk & Wagnalls New Standard Dictionary.

Ornament, n. 1. Any accessory, adjunct, or trapping that serves for use or for both use and adornment, * * *.

2. Something added as an embellishment; that which embellishes or adorns; whatever lends or is intended to lend grace or beauty to that to which it is added or belongs, as a jewel, a rhetorical embellishment, etc.—The Century Dictionary and Cyclopedia.

Ornament, n. 2. That which is added to embellish or adorn; * * *.— Webster's New International Dictionary.

The record in the *Blumenthal* case, *supra*, was made a part of the record in the case at bar.

The evidence in this case establishes without contradiction that the involved artificial flowers are used for the purpose of ornamenting and trimming hats and other articles of wearing apparel. That they come within the dictionary definitions of the terms "trimmings" and "ornaments" is not denied. Counsel for appellant recognizing this to be true, sought, by offering testimony in addition to that in the record in the *Blumenthal* case, *supra*, to prove that in the trade and commerce of the United States the terms "trimmings" and "ornaments" are so restricted in meaning and scope as to exclude artificial flowers.

It is argued by counsel for appellant, and concurred in by a majority of my associates, that the additional testimony in this case

establishes that the meaning of the terms "trimmings" and "ornaments" is so restricted and limited as to exclude artificial flowers.

In the opinion of my learned associate, Judge Lenroot, it is held that artificial flowers are excluded from the meaning and scope of the terms "trimmings" and "ornaments" by virtue of proof of commercial designation. It will be observed that the writer of that opinion studiously avoids any discussion or holding that the proof is of such character as to warrant a finding that the dictionary definitions of these terms are erroneous.

My learned associate, Judge Bland, concurs in the conclusion reached in the opinion of Judge Lenroot, because, as he says:

* * * I am convinced from the record and the various recognized authoritative definitions of the words "trimmings" and "ornaments" that, both commonly and commercially, artificial flowers are not included within the term, and that Congress did not use the words "trimmings" and "ornaments" in the broad sense as meaning anything that trims or ornaments.

\* \* \* \* \* \* \*

In the tariff sense, "trimmings" and "ornaments," commonly and commercially, are specific things. Artificial flowers is another class of specific things. The history of the artificial flower paragraph shows this to be true.

The phrase "by whatever name known," which has been held to preclude the proof of commercial designation, could only preclude the proof of commercial designation being controlling, if the words "trimmings" and "ornaments" actually covered the merchandise involved; that is, if the importation was, in fact, not "trimmings" or "ornaments," there could be no possible opportunity for the operation of the phrase.

In my opinion, proof of commercial designation is incompetent to restrict the scope and meaning of the terms of paragraph 1430. *Kotzin Bros. et al.* v. *United States*, 14 Ct. Cust. Appls. 99, T. D. 41589. Assuming, however, for the purpose of this opinion, that such proof is competent, I desire to invite attention to the well-established rules pertaining thereto. It is elementary that, while tariff statutes are drafted in the language of commerce, it will be presumed, in the absence of evidence to the contrary, that the common and commercial meanings of tariff terms are the same. Furthermore, the burden is upon those who assert that a tariff term has a restricted meaning in the trade and commerce of the United States to prove that fact by a preponderance of the evidence. It has been held repeatedly by the Supreme Court of the United States, and by this court, that, before commercial designation can be held to have been established, it must appear that at and prior to the enactment of the statute in question the term therein employed had a particular meaning in the trade and commerce of the United States different from its common meaning, and that such meaning was definite, uniform, and general throughout the trade and commerce of the United States. And it must further appear that, by virtue of such particular meaning, the merchandise

involved is excluded from the common meaning of such term. *Rice Millers Association, American Manufacturers* v. *United States and Oberle (Inc.)*, 15 Ct. Cust. Appls. 355, T. D. 42560, and cases therein cited.

The rule, well stated in the case of *Acker* v. *United States*, 1 Ct. Cust. Appls. 328, T. D. 31431, is quoted in the opinion of Judge Lenroot. The court there said:

> The further requisite, however, is necessary in assigning to a phrase a commercial limitation or application that *it must be proven not alone that the imported merchandise is not classed therewithin, but there must be assigned by proof to that phrase a scope and meaning which is clearly, definitely, and uniformly understood throughout the United States which includes some other merchandise and excludes the imported merchandise. Clafflin* v. *Robertson,* 38 Fed. Rep. 92; *Sidenberg* v. *Robertson,* 41 Fed. Rep. 763. It likewise must be shown in such cases that such meaning of the phrase in trade and commerce should differ from the ordinary dictionary meaning or that of common speech. *Maddock* v. *Magone,* 152 U. S. 368. (Italics mine.)

The rule is again accurately and concisely stated by Graham, P. J., in the case of *Jas. Akeroyd & Co. et al.* v. *United States,* 15 Ct. Cust. Appls. 440, T. D. 42641, where it was said:

> Such testimony, of course, amounts to no more than an expression of the individual opinion of the person giving it and does not, to any degree, amount to proof of commercial designation. If, under our holding in the *Chicago Wool Co.* case, *supra,* proof of commercial designation may be permitted in respect to the meaning of the language of said paragraph 1102, which question is not here involved, such proof must be, under the authorities, *that at and before the time of the enactment of the Tariff Act of 1922 the term "wool in the scoured state" had a definite, uniform, and general meaning in the trade and commerce of the country, other than its ordinary meaning; this proof may then be followed by proof showing what such meaning was, and that the wool in question was not included therein. United States* v. *Kwong Yuen Shing,* 1 Ct. Cust. Appls. 14, T. D. 30773; *United States* v. *Wells Fargo & Co.,* 1 Ct. Cust. Appls. 158, T. D. 31211; *United States* v *Solomon,* 1 Ct. Cust. Appls. 246, T. D. 31277; *Maine Central R. R. Co.* v. *United States,* 14 Ct. Cust. Appls. 411, T. D. 42054. (Italics mine.)

These principles have been announced in so many cases that there ought not be any misunderstanding concerning them. They mean, if I have any comprehension of them, that, in order to establish commercial designation, it must be shown by a preponderance of the evidence that the trade and commerce of the United States has definitely, uniformly, and generally given a meaning to a particular tariff term that is different from its common meaning; and that certain articles are included within, and other articles are excluded from, the trade meaning or understanding of the tariff term in question. It is not sufficient to establish, only, that certain merchandise is included within, or is excluded from, as the case may be, a certain tariff term. On the contrary the rule requires that the particular trade meaning must be established. Having established such meaning, I am sure that, in a vast majority of the cases, it would be clear

to the court whether the articles in question were, or were not, excluded from the tariff term, and it would not be necessary, as an aid to the court, to require a witness to state the obvious. Applying these well-settled rules to the evidence in the case at bar, it seems clear to me that appellant has failed to make a case.

In the opinion of my associate, Judge Lenroot, certain testimony is set out, and it is upon this testimony that it is claimed that proof of commercial designation has been established. I have considered the record with the greatest of care and I am satisfied that the quoted testimony is the strongest in the record upon this phase of the case.

. The witness Joseph Englander testified that he knew the trade meaning of the word "trimmings." He was then shown a number of articles, among them being motifs, passementeries, and medallions; he stated that these articles were included within the trade understanding of the terms "trimmings" and "ornaments." Furthermore, he referred to "yokes" and said that "baby yokes may be used as a trimming." Each of these articles is used as a "trimming" or "ornament," and it is apparent to me, from the testimony of the witness, that, because they are used as such, the trade understands them to be "trimmings" or "ornaments." Furthermore, each of these articles is within the common meaning of those terms, as defined in the dictionaries.

The witness Charles T. Riotte supplemented the testimony of the witness Englander by saying, in substance, that artificial flowers are excluded commercially from the terms "trimmings" and "ornaments."

The witness Joseph Mittelmark supplemented the testimony of the witnesses Englander and Riotte by saying that "trimmings" and "ornaments" are a special kind of merchandise and are dealt in as such; and that artificial flowers are a separate and distinct class of merchandise.

The witness Charles E. Turk said that he was engaged in the "trimmings and ornaments trade"; he supplemented the testimony of the witnesses above referred to by saying that the "artificial-flower business" is separate and distinct from his line of business.

The witnesses did not venture to give a trade definition or meaning of the terms "trimmings" and "ornaments." Had they done so, I am sure that the court would have been competent to say whether artificial flowers were, or were not, excluded from the statutory terms. The evidence in this case is precisely what the court said in the *Acker* and *Akeroyd* cases, *supra*, was not sufficient to prove commercial designation. The witnesses said that artificial flowers are excluded from the terms "trimmings" and "ornaments." Why are they excluded? What is the trade meaning of "trimmings" and "ornaments" upon which such testimony is based? The answer is

obvious. There is no evidence of any restricted trade meaning. I might say at this point that if the majority of the court had agreed to the application of the rules of commercial designation as applied in the opinion of my esteemed associate, Judge Lenroot (which, however, is not the case), the entire structure upon which commercial designation was originally established, and upon which it has stood for many many years, would have been destroyed, and all of the decisions based upon those rules over the many years of customs litigation would have been reversed. In that unfortunate event all that it would be necessary to prove in order to establish commercial designation is that certain articles are included by the trade within a tariff term and that the merchandise involved in a certain case is excluded therefrom. I most vigorously assert that this is not and never has been the law.

Fortunately, my esteemed associate, Judge Bland, bases his concurring opinion, as I understand it, upon the common meaning of the tariff terms "trimmings" and "ornaments," and upon the legislative history of the statute covering artificial flowers. In view of the fact that it requires the two opinions to reverse the court below, I must express my views with reference to the matters set out in the concurring opinion.

With reference to the legislative history, I find it only necessary to say that, while artificial flowers have been separately classified since the year 1792, there has been no legislation upon the subject since our decision in the Blumenthal case, supra. Furthermore, paragraph 1430, as pointed out in the Blumenthal case, provides that "trimmings" and "ornaments" shall be dutiable under that paragraph, regardless of the names by which they may be known, and whether or not provided for elsewhere. Accordingly, it is of no consequence that artificial flowers are provided for in paragraph 1419, if they are, in fact, covered by the provisions for "trimmings" and "ornaments" in paragraph 1430. While, in view of what has been said in the Blumenthal case, it is not of great importance, it might be mentioned here that the provision in paragraph 1419 for artificial flowers is followed by the language "not specially provided for." So much for the legislative history.

Much of what I have heretofore said pertaining to commercial designation applies with equal force to the claim that the record establishes a common meaning for the terms "trimmings" and "ornaments" which differs from the dictionary definitions. I might repeat, however, that the witnesses have failed to give any definition or meaning of these terms; it is obvious, therefore, that there is no evidence in the record of their common meaning. Furthermore, in the case of Jas. Akeroyd & Co., supra, we said:

This court has already construed paragraph 1102 in the *Chicago Wool Co.* case, *supra*, and has stated what, in its judgment, the common meaning of the term "wool in the scoured state" is; that matter, therefore, thus becomes *stare decisis*, and proof of the common meaning of the term, as in the case at bar, can not effect a change in that construction.

Again, in the case of *United States* v. *Ben Felsenthal & Co. et al.*, 16 Ct. Cust. Appls. 15, T. D. 42713, we said:

> We think it well settled that where a court of competent jurisdiction settles and judicially defines the common meaning of a term used in the statute, such a determination and adjudication becomes matter of law. In *Marvel* v. *Merrit*, 116 U. S. 11, Mr. Justice Mathews said:
>
>> The words used are not technical, either as having a special sense by commercial usage, nor as having a scientific meaning different from their popular meaning. They are the words of common speech, and, as such, their interpretation is within the judicial knowledge, and, therefore, matter of law.
>>
>> *         *         *         *         *         *         *
>
> This court has followed the same rule and when, as a matter of law, it has once determined the common meaning of a term used in a statute, has adhered to such common meaning until a legislative change in the statutory enactment in question has necessitated a changed determination of such meaning.

This court determined the common meaning of the terms "trimmings" and "ornaments" in the *Blumenthal* case, *supra*, and there held that the common meaning of those terms was in accordance with the dictionary definitions. Applying the rule announced in the *Akeroyd* and *Felsenthal* cases, *supra*, to the case at bar, it must be held that the question of the common meaning of the terms "trimmings" and "ornaments" is *stare decisis*.

I am not now attempting to suggest that paragraph 1430 includes all articles used as ornaments or trimmings. It may be that the Congress intended to limit the scope of this paragraph to millinery trimmings and ornaments, or to such as were used upon wearing apparel. If the opinion in the *Blumenthal* case is read with care, it will be observed that the decision was not extended to include artificial flowers other than those used as "trimmings" or "ornaments for hats, corsages, fur pieces, and ladies' coats." However, the artificial flowers in question could not be excluded from paragraph 1430 even under such a construction, because of the fact that the record establishes that they are used for so-called millinery purposes.

For the reasons stated I have found it necessary to dissent from the views expressed by the majority of the court. In my opinion the judgment below should be *affirmed*.

GRAHAM, P. J., concurs in the dissenting opinion.